ROBERTO TORRES OJEDA y DEBRA ANN CHÁVEZ SORGE, peticionarios, *Ex parte.*

*Número:* R-84-367    *Resuelto:* 9 de marzo de 1987

*Gabriel García Maya,* abogado de los recurrentes; *Roberto Schmidt Monge, Procurador General, Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

¿Admite nuestro ordenamiento jurídico un decreto de patria potestad y custodia compartida de menores por los padres post divorcio? Esta interrogante la plantea la sentencia de divorcio por consentimiento mutuo dictada por el Tribunal

Superior, Sala de Mayagüez, a petición de Roberto Torres Ojeda y Debra A. Chávez Sorge. Dicho foro rechazó una estipulación (¹) de ambos al efecto. (²) Se le concedió exclusivamente a la madre. A solicitud de ambos, revisamos.

I

La fiel adjudicación de la cuestión planteada requiere inicialmente un breve examen de los conceptos de patria potestad y custodia según visualizados en nuestro Código Civil, la doctrina y la jurisprudencia. Sólo así podremos entrelazar lo preceptuado en el Art. 107 del Código con las particularidades de los efectos del divorcio y la inequívoca premisa subyacente del legislador sobre el mejor bienestar de los hijos. Abordamos el problema, haciéndonos eco de la expresión de Castán Vázquez, de que todo intento de definir un concepto "entraña dificultades y atrae peligros" pues "[d]efinir obliga a limitar". J. M. Castán Vázquez, *La Patria Potestad*, Madrid, Ed. Rev. Der. Privado, 1960, pág. 9.

■ *Mallen* v. *Vidal et al.*, 25 D.P.R. 669, 670 (1917), sienta la primera pauta. A tenor del Art. 222 del Código Civil de 1902 —antecesor del Art. 152 actual— reconocimos que el derecho a la patria potestad era naturalmente inherente a los padres y un derecho fundamental de ambos.

Décadas después, en *Álvarez* v. *Srio. de Hacienda*, 80 D.P.R. 16, 50–51 (1957), nos pronunciamos más concreta-

---

(¹) Rezaba: "Los peticionarios han acordado que la patria potestad y la custodia de su hija menor Desiree Torres Chávez será para ambos y que regularán de mutuo acuerdo las relaciones paterno y materno-filiales de tal forma que redunde en beneficio de los mejores intereses de la menor. Ninguno de ellos podrá llevarse o permitir que se lleven la niña fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico a menos que ambos consientan por escrito."

(²) La ausencia de fundamento expreso del tribunal para sostener su posición, nos mueve a inferir que descansó en lo dispuesto por el Art. 107 del Código Civil.

mente sobre los elementos que agrupan la patria potestad. Citando a Puig Peña consignamos:

". . . la patria potestad ha de concebirse y ejecutarse como una función que el Estado reconoce en los padres respecto de los hijos, en beneficio de éstos" siendo pues caracteres de la patria potestad los siguientes "(*a*) constituye, ante todo, *un deber u obligación que no puede* ser objeto de excusa [ni renunciada] puesto que está asignada a los padres en virtud de los supremos principios de la moral familiar y razón social del Estado, que la articula en ellos como sujetos a quienes corresponden con exclusividad; (*b*) *esta obligación es de carácter personal* no pudiendo ser realizada a través de un tercero . . . (*c*) además *es intransferible;* no puede el padre transmitir a un tercero en bloque la patria potestad que ejerce sobre sus hijos . . . ; (*d*) finalmente representa una obligación positiva de tracto continuado, que exige y requiere el despliegue eficaz y constante de una conducta de cumplimiento suficiente para llenar el cometido propio de la patria potestad". (Énfasis en el original.)

La interacción de los caracteres que comprenden la institución ha sido objeto de varias definiciones. Castán Vázquez intenta recogerlas, al exponer que la patria potestad es *"el conjunto de derechos y deberes que corresponde a los padres sobre la persona y el patrimonio de cada uno de sus hijos no emancipados, como medio de realizar la función natural que les incumbe de proteger y educar a la prole".* (Énfasis en el original.) Castán Vázquez, *op. cit.,* págs. 9–10. (³)

_____

(³) Se ha apuntado que las Partidas intentaban una definición: "Patria potestas en latín, tanto quier dezir en romance, como el poder que han los padres sobre los fijos. (Part. 4a, Tít. XVII, Ley 1a)." J. M. Castán Vázquez, *La Patria Potestad,* Madrid, Ed. Rev. Der. Privado, 1960, pág. 10.

Por su parte, Muñoz Morales señala como precedente más remoto el contenido en el libro primero de la Instituta en su Tít. IX del Derecho Romano: "in potestate nostra sunt liberi nostri, quos ex justis nuptiis procreavimus— ius auten potestatis quod in liberos habemus, proprium est civium Romanorum; nulli enim alii sunt homines qui talem in liberos habeant potestatem, qualem nos habemus. (Bajo nuestra potestad están nuestros hijos a los cuales procreamos de justas nupcias. Pero el derecho de potestad que

■ Nuestro Código Civil comparte esta visión y establece en su Art. 152 (31 L.P.R.A. sec. 591) la regla general de que la patria potestad corresponde a ambos padres en el supuesto de que estén casados y en cuanto al hijo extramatrimonial, a aquel que lo hubiese reconocido. Reza:

> La patria potestad sobre los hijos no emancipados corresponde, a ambos padres conjuntamente pudiendo ejercerla por sí solo en casos de emergencia el que en ese instante tenga bajo custodia al menor.
>
> Todo hospital público o privado aceptará el consentimiento de cualesquiera de los padres con patria potestad sobre los hijos no emancipados en casos de tratamiento médico y operación de emergencia que sea recomendada por un facultativo autorizado. El Secretario de Salud establecerá los procedimientos administrativos necesarios para cumplir estas disposiciones.
>
> Corresponderá a uno solo de los padres la patria potestad cuando:
>
> (1) el otro haya muerto, se encuentre ausente o esté impedido legalmente;
>
> (2) sólo uno lo haya reconocido o adoptado. [4]

■ Es amplio el inventario preceptuado en dicho Código respecto a los deberes y facultades que el ejercicio de la patria potestad impone a los padres: [5] regir los bienes del me-

---

tenemos sobre los hijos es propio de los ciudadanos Romanos; pues no hay otros hombres que tengan sobre los hijos tal potestad cual nosotros la tenemos." L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Junta Editora U.P.R., 1947, T. I, pág. 478.

[4] No siempre fue así. Nuestro Código Civil, al igual que el español y el de otros países había perpetuado el anacronismo de atribuir tal poder (potestad) sólo al padre (patria). Véanse: Castán Vázquez, *op. cit.*, págs. 16–35; J. Lacruz Berdejo y F. Sancho Rebullida, *Derecho de Familia*, 3ra ed., Barcelona, Ed. Bosch, 1978, T. II, págs. 159–162; 167–168.

[5] En Puerto Rico véanse: E. González Tejera, *Bienestar del menor: Señalamientos en torno a la patria potestad, custodia y adopción*, en *Cambios sociales y nuevos enfoques en el Derecho de Familia*, Centro Investigaciones Sociales U.P.R., diciembre 1984, págs. 9–22; Muñoz Morales, *op. cit.*, págs. 476 *et seq.* En general: Lacruz Berdejo y Sancho Rebullida, *op. cit.*,

nor; (⁶) representarlos legalmente; (⁷) educarlos; (⁸) alimentarlos y cuidar de su salud física y mental; (⁹) consentir a su matrimonio; (¹⁰) corregirlos y castigarlos moderadamente; (¹¹) vigilar y protegerlos de peligros físicos y morales; (¹²) consentir a la adopción de sus hijos menores; (¹³) conceder la emancipación; (¹⁴) nombrarles tutor; (¹⁵) aceptar las donaciones que se les hagan, así como las herencias y legados si no tienen intereses incompatibles; (¹⁶) reservar a los hijos del primer matrimonio la propiedad de todos los bienes que haya adqui-

---

págs. 174–177; J. Castán Tobeñas, *Derecho civil español común y foral*, 8va ed., Madrid, Ed. Reus, 1966, T. V, Vol. II, pág. 151 y ss.; Castán Vázquez, *op. cit.*, pág. 178 *et seq.*; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1970, T. IV, Vol. II, pág. 188 *et seq.*

(⁶) Art. 154 y ss., 31 L.P.R.A. sec. 611 y ss. Incluye tal deber la facultad de: administrar y usufructuar los bienes adquiridos por el hijo no emancipado con su trabajo o industria; o cualquier otro título lucrativo; propiedad y usufructo de los bienes adquiridos por el hijo no emancipado con el caudal de los padres; administrar los bienes o rentas donadas o legadas al menor para los gastos de su educación e instrucción; enajenar bienes muebles hasta el valor de $2,000 y otorgar contratos de arrendamiento de propiedad inmueble por un término no mayor de seis años; enajenar o gravar bienes muebles de mayor valor o inmuebles mediante autorización judicial y previa comprobación de necesidad o utilidad; representar a los hijos en partición de herencia si no tienen intereses incompatibles, Art. 1013 (31 L.P.R.A. sec. 2879); contratar a nombre del menor, Art. 1211 (31 L.P.R.A. sec. 3376). Véanse otros deberes especiales con relación a los bienes: Arts. 158, 159, 162 (31 L.P.R.A. secs. 615, 616, 618). Sobre tales facultades véanse en general: Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1942, T. III, pág. 524 *et seq.*; Castán Tobeñas, *op. cit.*, pág. 166 *et seq.*

(⁷) Art. 153 (31 L.P.R.A. sec. 601).

(⁸) Const. E.L.A., Art. II, Sec. 5; Ley de 12 de marzo de 1903, Sec. 60, según enmendada (18 L.P.R.A. sec. 80(g)); *Guadalupe Viera* v. *Morell*, 115 D.P.R. 4 (1983); *Key Nieves* v. *Oyola Nieves*, 116 D.P.R. 261 (1985).

(⁹) Art. 152 (31 L.P.R.A. sec. 591); 8 L.P.R.A. secs. 404 y 431.

(¹⁰) Arts. 70(4), 74 y 77 (31 L.P.R.A. secs. 232(4), 242 y 245).

(¹¹) Art. 153 (31 L.P.R.A. sec. 601).

(¹²) Arts. 166 y 1803 (31 L.P.R.A. secs. 634 y 5142).

(¹³) Art. 135 (31 L.P.R.A. sec. 536).

(¹⁴) Arts. 232, 233 (31 L.P.R.A. secs. 901, 911).

(¹⁵) Arts. 174 y 176 (31 L.P.R.A. secs. 681, 683).

(¹⁶) Art. 567 (31 L.P.R.A. sec. 2002).

rido de su difunto consorte por testamento, por sucesión intestada, donación o cualquier otro título lucrativo, [17] y pedir nombramiento de defensor judicial cuando exista oposición entre sus intereses y los del hijo adoptado. [18]

Aunque el Código Civil y la jurisprudencia a veces tratan la custodia como una figura independiente de la patria potestad, con rigor científico, la primera realmente es un atributo inherente de la última. Así "los aspectos de custodia de menores no son en estricta lógica separables de la patria potestad". E. González Tejera, *Bienestar del menor: Señalamientos en torno a la patria potestad, custodia y adopción*, en *Cambios sociales y nuevos enfoques en el Derecho de Familia*, Centro Investigaciones Sociales U.P.R., diciembre 1984, pág. 48. En realidad la custodia es un componente de la patria potestad, pues ésta impone a los padres el deber primario de tener sus hijos no emancipados en su compañía. L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Ed. U.P.R., 1947, T. I, pág. 489; Art. 153 (1) del Código Civil, 31 L.P.R.A. sec. 601 (1). [19] Ello implica, como norma general, que aquel que ostente la

---

[17] Art. 923 (31 L.P.R.A. sec. 2731).

[18] Art. 160 (31 L.P.R.A. sec. 617).

[19] Castán Vázquez, *op. cit.*, pág. 186, comenta:

"La obligación de los padres de guardar a los hijos se deriva de la patria potestad como medio normal de cumplir la función que ésta entraña, y se funda, como ella, en el mismo Derecho natural. Es derecho al par que deber, constituyendo uno de los poderes-deberes típicos de la patria potestad.

"En la doctrina moderna se habla del *derecho de guarda* de los padres con un amplio concepto que comprende los tres medios esenciales de gobernar al hijo: la educación, la vigilancia y la corrección. Ahora, sin embargo, nos referimos exclusivamente al derecho y deber de los padres de tener en su compañía a los hijos.

"*Conviene recordar*, al tratar esta materia, que la función de convivencia se ejerce sobre personas; se habla del derecho de *retener* a los hijos, de *reclamarlos* a un tercero, etc.; pero, como dicen Kipp y Wolff, 'no existe posesión sobre el hijo', y, por tanto, ciertas cuestiones se plantean sólo en sentido figurado." (Énfasis en el original y escolio omitido.)

patria potestad también tiene la custodia. Su ejercicio no necesariamente significa que tiene que tenerlos en su compañía. La doctrina admite, ante circunstancias aconsejables y necesarias para el bienestar del menor, el alejamiento del que ostenta la patria potestad. Un ejemplo común es el internado del menor en una institución de enseñanza. Castán Vázquez, *op. cit.*, pág. 187. Véanse además casos citados, *infra*, págs. 479–480. En resumen, la custodia es la tenencia o control físico que tiene un progenitor sobre sus hijos.

## II

El Art. 107 (31 L.P.R.A. sec. 383), según enmendado, del Código Civil dispone:

> En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el tribunal, *en el ejercicio de su sana discreción,* considere que *los mejores intereses y bienestar del menor quedarán mejor servidos;* pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el tribunal al dictar sentencia de divorcio, según los casos.
>
> El cónyuge que haya sido privado de la custodia y la patria potestad tendrá derecho a recobrarlas si acreditare ante cualquier sala competente del Tribunal Superior el fallecimiento del otro ex cónyuge o demostrase a satisfacción del tribunal que a *los mejores intereses y bienestar* de los menores conviene la referida recuperación de patria potestad. (Énfasis suplido.)

Su texto, en algunos extremos, es de reciente cuño. Anteriormente establecía que en *todos* los casos de divorcio los hijos menores de edad serían puestos bajo el cuidado y patria potestad de la parte a favor de la cual se hubiere dictado sentencia. El divorcio, para todos los efectos, constituía una causa de privación de la patria potestad con carácter punitivo. *Cf.* Puig Brutau, *op. cit.*, pág. 246. Sin embargo, la Ley Núm. 100 de 2 de junio de 1976 eliminó de este precepto toda considera-

ción sobre la culpabilidad de cualesquiera de los cónyuges al momento de adjudicar la patria potestad y la custodia. *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495, 508–509 (1978); *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90, 104–105 (1976). Su Exposición de Motivos, págs. 315–316, proclama indubitadamente la norma del mejor bienestar del menor([20]) como guía para la formulación de conciencia judicial en la adjudicación:

> El menor tiene derecho a gozar de la vida más saludable y satisfactoria posible luego del divorcio de sus padres. Tiene derecho a quedar lo menos afectado posible por el fracaso matrimonial de sus padres. *Esto sólo se logrará tomando la determinación sobre su custodia y patria potestad en base a sus mejores intereses y bienestar y no en base a cuál de sus padres fue decretado "inocente".* (Énfasis suplido.)

En su perspectiva histórica el estatuto simplemente reitera e incorpora la norma judicial predicada en la máxima del poder de *parens patriae* basada, entre otros, en el caso de *Rodríguez v. Gerena*, 75 D.P.R. 900, 901–902 (1954):

> [El Art. 107 del Código Civil] no destruye o restringe el poder de los tribunales para adoptar las medidas necesarias en cuanto a la custodia de los hijos menores, con el fin de lograr y proteger su bienestar y sus mejores intereses. . . . No obstante tales disposiciones, una corte de justicia en el ejercicio del poder de *parens patriae,* tiene autoridad para darle la custodia de tales hijos a la parte perdidosa en acción de divorcio, si se le demuestra que es esa la medida más conveniente para ellos. Dichas disposiciones expresan una norma general, que está subordinada a la regla de que la consideración primordial es el superior interés público

---

([20]) Recientemente, nuestra jurisprudencia ha esclarecido y establecido los criterios para los juzgadores de instancia en torno a la guía del mejor beneficio del menor, *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90, 105 y ss. (1976); *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495 (1978). Para un análisis del concepto véase *Apuntes sobre procedimientos judiciales en torno a la familia*, Secretariado Conferencia Judicial, Tribunal Supremo de Puerto Rico, 1984, pág. 171 y ss.

del bienestar de los hijos, de "mucha más importancia que cualquier derecho correlativo" a la custodia. . . . La interpretación que les da el apelante nos llevaría al absurdo de que indefectiblemente habría que confiar la custodia al cónyuge victorioso, aun cuando el tribunal estuviera convencido de que ello redundaría en perjuicio de los hijos, y tendría el efecto de revocar la doctrina sabiamente establecida por este Tribunal desde hace muchos años, y que ahora reafirmamos, de que el derecho a la custodia está necesariamente subordinado al ejercicio por las cortes del poder de *parens patriae*. (Citas omitidas.)

El análisis de nuestra doctrina jurisprudencial bajo el texto anterior del Art. 107 y la enmienda experimentada en el 1976, permite varias conclusiones. Primero, es evidente que en su versión original, el Art. 107 no fue impedimento para que en un decreto de divorcio la patria potestad se concediera al cónyuge inocente y la custodia al culpable. Son abundantes nuestras decisiones al respecto. *Nudelman* v. *Ferrer Bolívar*, supra, pág. 495; *Concepción* v. *Concepción*, 105 D.P.R. 929 (1977); *Marrero Reyes* v. *García Ramírez*, supra; *N.N.N.* v. *N.N.N.*, 95 D.P.R. 291 (1967); *Colón* v. *Meléndez*, 87 D.P.R. 442 (1963); *Castro* v. *Meléndez*, 82 D.P.R. 573 (1961); *Rodríguez* v. *Torres*, 80 D.P.R. 778 (1958); *Pratt* v. *Reuter*, 79 D.P.R. 962 (1957); *Muñoz* v. *Torres*, 75 D.P.R. 507 (1953); *Rodríguez* v. *Gerena*, supra; *Santos* v. *Berdecía*, 73 D.P.R. 766 (1952); *Rodríguez* v. *Pagán*, 67 D.P.R. 345 (1947); *Fernández* v. *Martínez*, 59 D.P.R. 548 (1941); *Ríos* v. *Lafosse*, 59 D.P.R. 509 (1941); *Llopart* v. *Mesorana*, 49 D.P.R. 250 (1935); *Chardón* v. *Corté*, 45 D.P.R. 621 (1933); *Ex Parte Maldonado*, 42 D.P.R. 867 (1931); *Babá* v. *Rodríguez*, 36 D.P.R. 502 (1927); *Blanco* v. *Hernández*, 32 D.P.R. 22 (1923), y *Chabert* v. *Sánchez*, 29 D.P.R. 241 (1921).[21]

---

[21] En este sentido lo expresado en *Guadalupe Viera* v. *Morell*, supra, pág. 13 esc. 5 —en cuanto a que la patria potestad debe adjudicarse a uno solo de los ex cónyuges— debe estimarse *dictum*. *Cf. Liciaga Horta* v. *A.C.A.A.*, 105 D.P.R. 813, 815 (1977).

480

■ Segundo, en múltiples ocasiones dictaminamos que la patria potestad estaba "subordinada siempre al ejercicio por las cortes del poder de *parens patriae* y que el factor dominante en el ejercicio de tal poder [era] el bienestar del hijo o hijos". *Chardón* v. *Corte*, supra, pág. 625 y casos allí citados.

Tercero, tales adjudicaciones siempre se hicieron en casos contenciosos donde lo planteado era despojar de la patria potestad al cónyuge que la tuviere en virtud de una sentencia de divorcio. Nuestra investigación no ha aportado una sola instancia en que, a base del bienestar del menor, concediéramos la patria potestad originalmente al cónyuge culpable.

■ Y cuarto, esta fenomenología adjudicativa describe la verdadera aportación de la Ley Núm. 100: el reconocimiento expreso legislativo y de la doctrina jurisprudencial de que los tribunales pueden adjudicar y distribuir la patria potestad y custodia entre los ex cónyuges independientemente del concepto de culpa en el divorcio. Paralelamente, si el derrotero e intención legislativa es el mejor bienestar de los menores, no vemos fundamento válido alguno para que en la consecución de ese legítimo fin, la patria potestad y custodia no puedan ser compartida por ambos cónyuges si éstos lo convienen. ([22])

### III

■ Aclarado que nuestro derecho vigente permite la patria potestad y custodia compartida en divorcios decretados al amparo de las causales clásicas del Código Civil, no existe

---

([22]) En España, después de las enmiendas al título de Familia del Código Civil, informan Lacruz Berdejo y Sancho Rebullida, que luego del divorcio, separación o disolución del vínculo matrimonial toda alteración en cuanto al ejercicio de la patria potestad debe estar polarizada por la conveniencia del hijo. Tal alteración puede consistir desde la atribución total del ejercicio de la patria potestad a uno de los progenitores hasta la equilibrada distribución entre ambos de las facultades que la integran. *Op. cit.*, págs. 255–256. Véase Art. 92 del Código Civil español, según enmendado.

razón alguna por la cual con mayor justificación, se imponga igual solución a divorcios por consentimiento mutuo formulados al amparo del derecho a la intimidad del Art. II de nuestra Constitución.

La norma humana de civilidad que inspiró la decisión jurídica de *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250, 277 (1978), es perfectamente compatible y armonizable con ese enfoque.

Aunque lamentable, es innegable que una de las consecuencias del divorcio es la ruptura del núcleo familiar. Este rompimiento, de ordinario doloroso en los aspectos afectivos, físicos y espirituales, se torna mucho más complejo cuando en el cuadro familiar existen menores, verdaderas víctimas inocentes. El fracaso matrimonial no debe ser óbice para el éxito compartido subsiguientemente en la relación materno y paterno-filial, que sabiamente se logra mediante abnegación, sacrificio y altruismo de los ex cónyuges. Reconocemos que en la práctica, una petición de divorcio por consentimiento mutuo impone a las partes una seria y profunda reevaluación sobre varios aspectos, posteriormente recogidas en las estipulaciones a ser sometidas al tribunal. Una de extrema importancia es el futuro y bienestar de los hijos. Nada les impide acordar, en aras de causar el menor daño emocional posible, que la patria potestad y custodia sea compartida.

En ausencia de causa justificada, sujeto el análisis a un preclaro discernimiento, la formulación de consciencia judicial decisoria en todo caso responderá —entre otros— a la ponderación de varios factores. Ello persigue determinar si existe una probabilidad real de que el esquema de patria potestad y custodia compartida propuesto habrá de funcionar entre los ex cónyuges que la solicitan. Es menester un acuerdo previo de que la patria potestad y custodia de sus hijos será compartida. Esta decisión inicial debe judicialmente ser mirada con simpatía y favorecida. De ordinario promueve el

mejor bienestar del menor. Sin embargo, debido a la "alta responsabilidad del Estado velar por la estabilidad de la familia, la guarda y cuidado de los hijos, . . . [y] la adecuada protección de las partes que disuelven su vínculo matrimonial", *Figueroa Ferrer* v. *E.L.A.*, supra, pág. 275, el tribunal deberá verificar que la misma no sea producto de la irreflexión o coacción, y por ende, cause mayor perjuicio al menor del que se trata de evitar. A tales efectos, el tribunal investigará si los padres poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente. Ello implica superar desavenencias personales, y por imperativo, sostener adecuada comunicación para adoptar aquellas decisiones conjuntas que redunden en beneficio y los mejores intereses del menor. En esta misión, el tribunal examinará si entre las partes existe un grado manifiesto de hostilidad y tensiones —que lejos de ser pasajeras— sean sustanciales y si existe una probabilidad real de conflictos futuros que hagan inoperable el acuerdo. También podrá auscultar el parecer de los menores cuando la edad de éstos lo permita. El foro de instancia podrá inquirir sobre las siguientes interrogantes: ¿Cuáles son los verdaderos motivos y objetivos por los cuales la pareja ha solicitado la patria potestad y custodia compartida? La profesión, ocupación u oficio que realizan, ¿impedirá que efectivamente funcione el acuerdo? ¿Admite el ingreso económico de ambos cualquier costo adicional que origine la custodia compartida? ¿Afecta perjudicialmente la ubicación y distancia de ambos hogares la educación de los niños?

La ponderación de todos los factores enumerados y aquellos otros pertinentes, proveerá la solución. Atribuir a cada cual su justo valor, según las circunstancias peculiares del caso, será la clave para su disposición final. Salvadas estas cuestiones y evaluadas satisfactoria y positivamente las cualificaciones de los padres, si efectivamente los niños se beneficiarán de la custodia compartida *vis-à-vis* la custodia de uno

solo, el tribunal deberá así decretarlo. Si determina que las necesidades sicológicas o emocionales del niño y su desarrollo se verán afectados negativamente, rechazará la solicitud y adjudicará la patria potestad y custodia conforme a la doctrina prevaleciente del mejor interés y bienestar. El decreto expondrá las razones en que se fundamenta.

■ Los elementos y criterios esbozados deben ser expuestos y reducidos a escrito por los padres en la estipulación. Ésta será el punto de partida. De no existir este acuerdo de custodia y patria potestad compartida, el tribunal procederá a adjudicarla a uno de los progenitores. Contendrá todos los datos indicados para la investigación y comprobación judicial. Deben evitarse las ambigüedades. El acuerdo tiene que ser específico con relación al tiempo que pasarán los niños con cada cual; la educación que recibirán; su cuidado diurno; su religión, si alguna; localización del hogar u hogares, y otras áreas relacionadas con la crianza.

Para ultimar, estamos conscientes de que esta decisión no es una panacea para curar los males del divorcio en los hijos. Estará sujeta a reparos de que es un ideal inalcanzable, de uso limitado, y susceptible de generar mayores problemas familiares y judiciales de los que intenta remediar. Reconocemos la infortunada realidad de que no toda pareja de ex cónyuges estarán siempre capacitados para ser acreedores a la misma. Más aún, existirán casos en que aun capacitados los cónyuges, al momento del divorcio dicha solución no fomente los mejores intereses o bienestar del menor.

■ Estas objeciones, aunque legítimas, no devalúan nuestro firme convencimiento de que la patria potestad y custodia compartida es un instrumento positivo y una solución adicional que los tribunales poseen en el delicado descargo de su función de *parens patriae*, para enfrentar el serio problema de las relaciones entre padres e hijos ante la ruptura del vínculo matrimonial. Convencidos como estamos, habremos de

abstenernos de clasificarla a priori como una norma de excepción. Debe estimarse como una alternativa más. En el área compleja del derecho de familia —eminentemente humana— los mecanismos legales no pueden ser los únicos disponibles para resolver los conflictos. De ello deben estar conscientes todos los participantes, incluso los abogados. Éstos deberán cooperar de buena fe para que se fortalezcan, en lugar de que se debiliten, los lazos afectivos entre sus progenitores. En esa tarea, afinar la sensibilidad humana para intuir dónde está el mejor bienestar del menor, es digna recompensa de la noble función social de la abogacía. El tiempo es ingrediente esencial. Unido al amor de los padres, brindará la seguridad y espíritu de valentía suficientes que requiere compartir tan noble misión.

Por los fundamentos expuestos, *se devolverá el caso al tribunal de instancia para que, conforme lo pautado, previa oportunidad a las partes, reevalúe su determinación.*

El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado Señor Hernández Denton emitió voto particular.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

En los últimos meses, desafortunadamente, nos hemos visto obligados a expresar nuestra inconformidad en relación con un gran número de las decisiones que una mayoría de los señores jueces que integran el Tribunal han tenido a bien emitir, lo cual, inclusive, nos causa cierto grado de incomodidad. Ello no obstante, las responsabilidades que pesan sobre nuestros hombros como consecuencia del cargo que ocupamos nuevamente no nos permiten permanecer callados ante la decisión que hoy se emite.

Disentimos básicamente por dos razones. En primer lugar, entendemos que el Tribunal —so color de su poder inherente de interpretación de las leyes— *claramente ha invadido un campo que le está vedado: el de legislar*, facultad que, como sabemos, corresponde a la Asamblea Legislativa de Puerto Rico. Por otro lado, somos del criterio que la decisión emitida desafortunadamente tendrá la consecuencia de perjudicar a aquellos a quienes supuestamente pretende ayudar, esto es, a los hijos de padres divorciados.

## I

Con anterioridad al 2 de junio de 1976 el Código Civil disponía en su Art. 107 (31 L.P.R.A. sec. 383), que "[e]n todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y patria potestad de la parte a favor de la cual se hubiera dictado sentencia". El 2 de junio de 1976 se aprobaron tres leyes —Núms. 99, 100 y 101— que enmendaron varios artículos del Código Civil referentes a la patria potestad sobre los hijos no emancipados y los efectos del divorcio respecto de la patria potestad y de los derechos de los ex cónyuges. El citado Art. 107 quedó enmendado por la Ley Núm. 100, disponiendo actualmente:

> *En todos los casos de divorcio* los hijos menores serán puestos bajo el cuidado y la patria potestad *del cónyuge* que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero *el otro cónyuge* tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos.
>
> *El cónyuge* que haya sido *privado de la custodia y la patria potestad* tendrá derecho a recobrarlas si acreditare ante cualquier sala competente del Tribunal Superior el fallecimiento del otro ex cónyuge o demostrase a satisfacción del tribunal que a los mejores intereses y bienestar de los menores conviene *la referida recuperación de la custodia y la patria potestad.* (Énfasis suplido.)

Dos cosas importantes saltan a la vista al leer este artículo. *En primer lugar*, se dispone para "el cuidado y la patria potestad" de los menores habidos en el matrimonio, una vez éste se disuelva. Es decir, se continúa la tendencia a que la patria potestad y la custodia no se desliguen una de la otra. Véanse: E. González Tejera, *Bienestar del menor: Señalamientos en torno a la patria potestad, custodia y adopción*, en *Cambios sociales y nuevos enfoques en el Derecho de Familia*, Centro Investigaciones Sociales U.P.R., 1984, pág. 48; L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Ed. U.P.R., 1947, T. I, pág. 478. *En segundo lugar*, se señala que corresponderá *a uno* de los cónyuges la patria potestad y la custodia, *sin perjuicio* del derecho *del otro* a continuar relaciones de familia con sus hijos según lo determine el tribunal al dictar la sentencia de divorcio y de que pueda "recuperar" la custodia y patria potestad de sus hijos cuando acredite, a satisfacción del tribunal, o el fallecimiento del ex cónyuge o que ello resulta más conveniente a los mejores intereses de los menores.

Interpretar que conforme a este artículo podrá conferirse la patria potestad a ambos cónyuges *significa darle la espalda a las claras disposiciones en que está concebido el transcrito artículo*. Ello, naturalmente, atenta contra el precepto de hermenéutica legal, harto conocido, de que "[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, y que el texto claro de una ley "es la expresión por excelencia de la intención legislativa". *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865, 871 (1983); *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101 (1964).

Es interesante notar que uno de los alcances más importantes de la reforma introducida por las citadas leyes Núms. 99, 100 y 101 —predicadas en el propósito de eliminar el discrimen por razón de sexo que existía bajo los artículos enmen-

dados— fue la de conferir la patria potestad a ambos padres conjuntamente *mientras estén casados entre sí;* Art. 152 (31 L.P.R.A. sec. 591), según enmendado por la Ley Núm. 99, citada. De haber querido el legislador que la patria potestad compartida establecida por la Ley Núm. 99 pudiera continuar después del divorcio, fácil le hubiera sido así disponerlo al enmendar el Art. 107 mediante la Ley Núm. 100. No lo hizo. Mal podría argumentarse que se trata de una inadvertencia si se considera que ambas leyes se originaron en proyectos del Senado —P. del S. 1655 y P. del S. 1656, respectivamente— *que fueron objeto de estudio y debate conjuntamente, y finalmente aprobadas el mismo día.*

No debe perderse de vista que aparte de derogar el discrimen contra la mujer que establecía el citado Art. 152 ([1]), *el único otro posible objetivo de la referida Ley Núm. 99* —al enmendar dicho artículo y conferir a ambos padres conjuntamente la patria potestad sobre sus hijos— *tuvo que por necesidad ser el fortalecimiento de la unión conyugal.* Una vez disuelto el matrimonio, *ya no hay unión matrimonial que proteger.*

Debe señalarse, en adición, que dicha Ley Núm. 99 al enmendar también el Art. 162 del Código Civil, 31 L.P.R.A. sec. 619, y disponer en cuanto al derecho de usufructo sobre los bienes de los hijos al decretarse el divorcio de sus padres *se refirió a "aquél" a quien se le hubiese adjudicado la patria potestad y custodia.* Al igual que lo hizo la Ley Núm. 100 respecto del Art. 107, la Ley Núm. 99 reconoce *a uno solo* de los ex cónyuges —el padre o la madre— con derecho a la patria potestad y custodia. ([2])

---

([1]) Disponía, en lo aquí pertinente:

"La patria potestad sobre los hijos legítimos no emancipados corresponde, en primer término, al padre, y en ausencia, impedimento legal o muerte de éste, a la madre." Art. 152 (31 L.P.R.A. sec. 591).

([2]) Expresa el Art. 162, según enmendado por la referida Ley Núm. 99 de 2 de junio de 1976:

488

Respecto a este aspecto, por último, merece destacarse que no constituye fundamento válido en contrario el hecho de que el legislador —que actuó respecto a esta materia por última vez en 1976 al aprobar las citadas Leyes Núms. 99, 100 y 101— no haya actuado con posterioridad a nuestra decisión en *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250 (1978) —decisión mediante la cual reconocimos el derecho de dos personas a divorciarse por consentimiento mutuo— y que, por lo tanto, dicha legislación no gobierna esta situación en específico. Tenemos que presumir que nuestros legisladores —muchos de los cuales son abogados— descargan sus obligaciones en forma responsable. Es una realidad indiscutible que no han actuado con posterioridad a haberse emitido la decisión en el caso *Figueroa Ferrer* v. *E.L.A.*, ante. La "inacción" del legislador, ¿no es índice precisamente de la intención legislativa al respecto? ¿Acaso no significa que nuestra Asamblea Legislativa entiende que la situación debe permanecer inalterada?

Somos del criterio que ante tan claros indicadores, este Tribunal debe abstenerse de variar la expresa intención legislativa y letra de la ley pertinente a la materia aquí en controversia. Dicha situación es una complicada y delicada que amerita —*si es que se entiende que debe ser variada*— profundo estudio y consideración por la Asamblea Legislativa; la rama del Gobierno de Puerto Rico que cuenta con los medios necesarios para realizar las investigaciones pertinentes en la consecución de ese propósito mediante la celebración de vistas públicas donde se escuche la opinión de estudiosos y conocedores de la materia. No se actúa juiciosamente cuando lo hacemos meramente a base de la opinión personal nuestra sobre qué es más beneficioso para los hijos de padres divorciados.

---

"En el caso de divorcio, el usufructo de los bienes, de los hijos no emancipados corresponderá, conforme a lo establecido en las secciones anteriores, *a aquel* que tenga al menor bajo su potestad y custodia." (Énfasis suplido.)

Debe mantenerse siempre presente que no poseemos el monopolio de la verdad.

## II

Al implantar e imponer su opinión de que resulta conveniente que se confiera la patria potestad a ambos ex cónyuges, la mayoría del Tribunal se basa en una situación ideal que dista un abismo de la realidad. Parte de la premisa utópica de que dos personas, que no pudieron resolver sus problemas matrimoniales y que no pudieron seguir viviendo juntos en unión a sus hijos menores de edad, pueden en buena armonía descargar completamente, sin perjuicio para los menores, las graves responsabilidades que la patria potestad y custodia conllevan después de haberse divorciado.

No debemos perder de vista que el problema se agudiza cuando se trata de una situación en que al momento de decretarse el divorcio exiten niños *de corta edad* en la etapa de formación y desarrollo. En estos casos, por lo general, se trata de una madre y un padre joven con aptitud y derecho para encauzar nuevamente sus vidas después del fracaso de un primer matrimonio. Las nuevas responsabilidades que asumirán les llevarán con toda seguridad a buscar nuevas relaciones y a contraer nupcias subsiguientemente. Todo ello, desafortunadamente, tenderá a alejar más a un ex cónyuge del otro, haciendo que la comunicación entre ellos se dificulte aún más. Por otro lado, el no tener las responsabilidades bien delineadas —y, por el contrario, compartidas— puede tener el efecto indeseado de que el padre o la madre empiecen a desligarse de las mismas descansando en la "excusa legal" de que ambos tienen los mismos derechos y, por lo tanto, las mismas obligaciones; todo ello en perjuicio de los menores.

Concedemos que pueden darse casos en que la patria potestad compartida pueda tener éxito. A nuestro juicio, sin embargo, esos casos constituyen la excepción. Ahora bien, en relación con esos casos excepcionales en que los ex cónyuges

puedan lograr ponerse de acuerdo armoniosamente en cada situación que le sea requerida, no vemos por qué no pueda haber entre ellos la misma buena disposición sin necesidad de un ejercicio conjunto e indivisible de la patria potestad.

Reconocemos, igualmente, que la decisión de conceder la patria potestad y custodia a ambos ex cónyuges siempre estará sujeta a revisión por los tribunales. Ahora bien, constituye una realidad con la que aparente y desafortunadamente tenemos que vivir que —debido a la congestión de asuntos pendientes existentes en las salas de relaciones de familia— esa "revisión" no se va a producir con la celeridad que amerita el asunto. Ello, sin lugar a dudas, resultará en perjuicio para los hijos menores de edad por cuanto ya habrán sufrido el impacto del deterioro de las relaciones entre los ex cónyuges para la fecha en que el tribunal resuelva la cuestión.

Por otro lado no debemos perder de vista que no han sido muy alentadoras las experiencias sufridas por otras jurisdicciones que han intentado, *mediante legislación,* hacer lo que hoy este Tribunal implanta mediante fíat judicial. En numerosos estados de la Unión norteamericana se ha legislado para hacer permisible la concesión de lo que en aquellas jurisdicciones se llama *joint custody,* que podríamos traducir como custodia conjunta. Oregón inició este tipo de legislación en 1978 y desde entonces más de treinta estados han adoptado, o están en un proceso de adoptar, similar legislación. Véase J. A. Zimmerman, *The Problems of Shared Custody,* en 4 Cal. Law. Rev. 25 (1984). Según la autora, la vigencia de esos estatutos ha creado numerosos problemas. De hecho, a pesar de esos estatutos, los tribunales se han negado a conceder la custodia conjunta en noventa por ciento de los casos, y según algunos analistas en un 95%. Véase la excelente monografía de L. M. Hyde, Jr., *Child Custody in Divorce,* en 35 Juv. Fam. Ct. J. 5 (1984). La referida legislación, en adición, ha merecido severas críticas. Véase G. N. Skoloff, *Joint Custody: A Jaundiced View,* 20 Trial 52 (1984). En Puerto Rico el asun-

to se complica aún más; aquí está envuelta la patria potestad, situación que conlleva el ejercicio de unos derechos y responsabilidades que con toda probabilidad hará la situación —si es que ello es posible— aún más difícil y escabrosa.

A manera de ejemplo, veamos la labor que conllevará a nivel de instancia la concesión de patria potestad a ambos ex cónyuges, esto es, las responsabilidades que le impone la decisión emitida en el presente caso a nuestros jueces de instancia. En palabras de la opinión mayoritaria:

.    .    .    .    .    .    .    .

En ausencia de causa justificada, sujeto el análisis a un preclaro discernimiento, la formulación de consciencia judicial decisoria en todo caso responderá —entre otros— a la ponderación de varios factores. Ello persigue determinar si existe una probabilidad real de que el esquema de patria potestad y custodia compartida propuesto habrá de funcionar entre los ex cónyuges que la solicitan. Es menester un acuerdo previo de que la patria potestad y custodia de sus hijos será compartida. Esta decisión inicial debe judicialmente ser mirada con simpatía y favorecida. De ordinario promueve el mejor bienestar del menor. Sin embargo, debido a la "alta responsabilidad del Estado velar por la estabilidad de la familia, la guarda y cuidado de los hijos, . . . [y] la adecuada protección de las partes que disuelven su vínculo matrimonial", *Figueroa Ferrer* v. *E.L.A.*, supra, pág. 275, el tribunal deberá verificar que la misma no sea producto de la irreflexión o coacción, y por ende, cause mayor perjuicio al menor del que se trata de evitar. *A tales efectos, el tribunal investigará si los padres poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.* Ello implica superar desavenencias personales, y por imperativo, sostener adecuada comunicación para adoptar aquellas decisiones conjuntas que redunden en beneficio y los mejores intereses del menor. *En esta misión, el tribunal examinará si entre las partes existe un grado manifiesto de hostilidad y tensiones —que lejos de ser pasajeras— sean sustanciales y si existe una probabilidad real de conflictos futuros que hagan inoperable el acuerdo. . . .*

El foro de instancia podrá inquirir sobre las siguientes interrogantes: *¿Cuáles son los verdaderos motivos y objetivos por los cuales la pareja ha solicitado la patria potestad y custodia compartida? La profesión, ocupación u oficio que realizan, ¿impedirá que efectivamente funcione el acuerdo? ¿Admite el ingreso económico de ambos cualquier costo adicional que origine la custodia compartida? ¿Afecta perjudicialmente la ubicación y distancia de ambos hogares la educación de los niños?*

La ponderación de todos los factores enumerados y aquellos otros pertinentes, proveerá la solución. *Atribuir a cada cual su justo valor, según las circunstancias peculiares del caso, será la clave para su disposición final. Salvadas estas cuestiones y evaluadas satisfactoria y positivamente las cualificaciones de los padres, si efectivamente los niños se beneficiarán de la custodia compartida vis-à-vis la custodia de uno solo, el tribunal deberá así decretarlo.* Si determina que las necesidades sicológicas o emocionales del niño y su desarrollo se verán afectados negativamente, rechazará la solicitud y adjudicará la patria potestad y custodia conforme a la doctrina prevaleciente del mejor interés y bienestar. El decreto expondrá las razones en que se fundamenta. (Énfasis suplido.)

Toda esta labor investigativa y "decisoria" que requiere la opinión mayoritaria no sólo resultará un objetivo inalcanzable en la inmensa mayoría de los casos *sino que no está enmarcada en la realidad cotidiana de nuestras recargadas salas de relaciones de familia.* No hay duda que siempre resulta más atractivo y simpático asumir las posiciones idealistas y utópicas. Ello es así por cuanto en el mundo de los sueños, todo parece ser posible y más bonito. Ahora bien, ciertamente no podemos actuar bajo la creencia de Segismundo, el de Calderón de la Barca, de que "toda la vida es sueño". Después de todo, hay que recordar que "los sueños, sueños son". Este Tribunal definitivamente viene en la obligación de reconocer y enfrentarse a la realidad que lo rodea y a resolver los casos de acuerdo a ésta.

## III

En resumen, somos del criterio que la concesión de la patria potestad conjunta al padre y a la madre divorciados con toda seguridad ha de causar más problemas que los que pueda resolver, con los consiguientes perjuicios para los hijos menores de edad.

Entendemos, en adición, que la decisión emitida lamentablemente es el producto de una noción equivocada sobre cuál es la función de este Tribunal en nuestro sistema de justicia. Se le da la espalda y se descarta la clara letra de la ley vigente sobre la materia aquí en controversia; decisión que tiene como única base, repetimos, la opinión personal que al respecto tienen los señores jueces que suscriben la misma. Al así actuar, se olvidan de que venimos obligados a "respetar la discreción legislativa, sin expresar —porque no nos atañe— opinión sobre la sabiduría o conveniencia del estatuto" ante nuestra consideración. *Cervecería Corona, Inc.* v. *Srio. Obras Públicas*, 97 D.P.R. 44, 53 (1969).

Hoy, so pretexto de que resulta conveniente para los hijos de padres divorciados, se interviene con la letra expresa de un estatuto y se interpreta el mismo de forma acomodaticia a unas creencias personales. Mañana se puede intentar violentar el mandato expreso de otras leyes con consecuencias mucho más graves para nuestros conciudadanos. Es por ello que disentimos.

—O—

Voto particular emitido por el Juez Asociado Señor Hernández Denton.

El Sr. Roberto Torres Ojeda y la Sra. Debra A. Chávez Sorge solicitaron la revisión por este Tribunal de la sentencia de divorcio por consentimiento mutuo dictada por el Tribunal Superior, Sala de Mayagüez. Señalan como único error que el tribunal a quo no aceptó la estipulación mediante la cual los

peticionarios compartían la patria potestad y la custodia de su hija menor. Estoy de acuerdo con la opinión mayoritaria en cuanto dispone que nuestro ordenamiento jurídico admite la patria potestad y custodia compartida post divorcio. Sin embargo, por la importancia y la naturaleza del asunto estimo necesario unas reflexiones adicionales sobre la función de los tribunales al considerar un convenio de custodia compartida.

## I

El 14 de mayo de 1984 los peticionarios presentaron una petición de divorcio por consentimiento mutuo conforme a lo establecido en *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250 (1978). Entre los acuerdos y estipulaciones incluidos como parte de la petición se expresó que la patria potestad y la custodia de su hija menor sería otorgada a ambos y que regularían de mutuo acuerdo las relaciones paterno y materno-filiales. Luego de celebrada la correspondiente vista, el tribunal dictó sentencia el 29 de junio de 1984 y concedió la patria potestad y custodia a la madre; rechazó de esta forma la estipulación sometida. Los peticionarios recurren ante este Tribunal para solicitar que se revoque la sentencia del foro de instancia y se acepten los acuerdos sobre patria potestad y custodia suscritos por ellos.

## II

En la decisión normativa de *Figueroa Ferrer* v. *E.L.A.*, supra, autorizamos el divorcio por consentimiento mutuo e impartimos una nueva dimensión al derecho a la intimidad; se amplió la protección constitucional al núcleo familiar. Concluimos que las Secs. 1 y 8 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico no permiten limitar los fundamentos del divorcio a causales basadas en el concepto de culpa y que "el Estado está impedido . . . de obligar a dos seres humanos a permanecer atados cuando ambos re-

conocen que la convivencia entre ellos se ha hecho imposible". *Figueroa Ferrer* v. *E.L.A.*, supra, pág. 275. Por la vía judicial se adoptó como causal en los procedimientos de divorcio la mutua decisión de divorciarse por la ruptura irreparable de los nexos de la convivencia matrimonial, siguiéndose una ruta ya trazada por otros países para reformar el derecho de familia. L. Muñiz-Argüelles, *Reflexiones en torno a las alternativas de reforma a la ley de divorcio*, 14 Rev. U.I.A. 107 (1979); P. Salicrup, *Hacia una nueva reglamentación del divorcio en Puerto Rico*, 47 Rev. Jur. U.P.R. 223 (1978); C. E. Mascareñas, *La disolución del matrimonio en el Derecho Puertorriqueño*, 29 Rev. Jur. U.P.R. 269 (1960).

A partir de la decisión de *Figueroa Ferrer* v. *E.L.A.*, supra, los casos de divorcio por consentimiento mutuo han registrado un ascenso vertiginoso. Las estadísticas recopiladas por la Oficina de Administración de los Tribunales revelan que el divorcio por consentimiento mutuo constituye la principal forma de obtener el divorcio en Puerto Rico. Para el período de 1982–1983 se presentaron 20,075 divorcios; de éstos, un total de 8,719, o sea, un 43% fueron divorcios por consentimiento mutuo. Los divorcios por trato cruel e injurias graves ocuparon el segundo lugar con un 21%; en tercer lugar se encuentran los divorcios por separación con un 20% del total. Véase *Apuntes sobre procedimientos judiciales en torno a la familia*, Secretariado Conferencia Judicial, Tribunal Supremo de Puerto Rico, 1984, pág. 198.

El patrón de litigación del divorcio por consentimiento mutuo también ha sido objeto de estudio. Se ha encontrado una marcada falta de uniformidad en los procedimientos en las diversas salas del tribunal de primera instancia. Al interpretar la decisión de *Figueroa Ferrer* v. *E.L.A.*, supra, los jueces de instancia se han enfrentado a cuestiones sustantivas que no fueron resueltas o aclaradas adecuadamente en la decisión original y a problemas procesales para los cuales no se proveyeron normas o reglas específicas. Picó Vidal, *Divorcio*

*por consentimiento mutuo: su tramitación en los tribunales*, Centro Investigaciones Sociales U.P.R., 1984.

Por deferencia a la Asamblea Legislativa, y en espera de una nueva legislación para regir la disolución matrimonial mediante el consentimiento de ambas partes, en *Figueroa Ferrer* v. *E.L.A.*, supra, se establecieron unos requisitos o medidas de carácter permanente e irrevocables y otras con carácter provisional. Se dejaron al diseño legislativo las cuestiones procesales de aplicación diaria y las salvaguardas razonables para defender la estabilidad de la familia siempre que no violaran los derechos garantizados por la Constitución.

Como desde entonces la Legislatura no ha aprobado legislación con normas específicas para los divorcios por consentimiento mutuo, la experiencia de los tribunales de instancia y de esta curia, así como los estudios preparados para la Conferencia Judicial de 1984, nos convencen de que debemos ampliar el dictamen de *Figueroa Ferrer* v. *E.L.A.*, supra, para incluir decisiones compartidas como la que tenemos ante nuestra consideración y establecer los requisitos para la tramitación de la acción en el caso de los divorcios por consentimiento mutuo cuando hay hijos menores.

Al amparo de nuestro poder inherente de fijar el significado de las disposiciones constitucionales y por la importancia del derecho a la intimidad, tenemos el ineludible deber de elaborar normas que le den vigencia a los derechos humanos consagrados en nuestra Constitución. En *Figueroa Ferrer* v. *E.L.A.*, supra, afirmamos que este Tribunal tiene que proteger el derecho a la intimidad de los puertorriqueños en el ámbito de las relaciones de familia. La reforma integral del estatuto de divorcio es impostergable, aunque es preferible que medie la acción legislativa en este proceso. No obstante, la historia nos demuestra que "los parlamentos no son los únicos agentes de cambios sociales necesarios. Cuando se trata de mantener vivo un esquema constitucional, de conservarlo en buena sintonía con las realidades del país, es principal deber de la judi-

catura propender igualmente a tal fin, aunque con la mesura y circunspección que le impone su papel dentro de nuestro sistema de gobierno y sin exceder el marco de sus atribuciones". *Figueroa Ferrer* v. *E.L.A.*, supra, pág. 278.

La transcendencia histórica de una constitución depende fundamentalmente de la capacidad de sus intérpretes para adaptar sus postulados a los problemas y necesidades de los pueblos a través del tiempo. Nos corresponde interpretar la Constitución de acuerdo a su significado original, pero dentro del contexto de nuestra realidad utilizando la historia y los precedentes como punto de partida para delinear sus contornos en nuestra época.

Este caso, en que el ilustrado tribunal de instancia no aceptó un acuerdo del matrimonio Torres Chávez de compartir la patria potestad y la custodia, nos presenta una oportunidad para cumplir con nuestra responsabilidad.

## III

La experiencia y análisis de la práctica judicial revela que el sistema de adjudicación de custodia en nuestro país ha resultado en una otorgación casi exclusiva de la custodia a las madres. Según un estudio reciente, en 1979 la custodia de los menores se otorgó a las madres en el 96% de los casos estudiados. Vázquez Calzada, Carnivali, Morales, *El divorcio en Puerto Rico: su distribución y características*, Centro Investigaciones Demográficas, Escuela Salud Pública U.P.R., 1985, pág. 25. La preferencia por la madre, según un estudio de la Prof. Marcia Rivera Quintero, responde a la visión estereotipada de la mujer según la cual se concibe que su única función social es la crianza de los hijos. M. Rivera Quintero, *Las adjudicaciones de custodia y patria potestad en los Tribunales de Justicia de P.R.*, 39 Rev. Col. Abo. P.R. 177 (1978); véase también Muñoz Vázquez, Fernández Bauzo, *Divorcio, Persona y Sociedad*, Centro Investigaciones Sociales U.P.R., 1984, págs. 8–10. En la jurisprudencia reciente también se encuen-

tra la doctrina de preferencia materna cuando en igualdad de circunstancias la madre se presume mejor dotada para ostentar la custodia. *Nudelman* v. *Ferrer Bolívar*, 107 D.P.R. 495 (1978).

Las investigaciones sociales recientes en torno al problema de la custodia de menores demuestran que el sistema de adjudicación de custodia única con frecuencia produce dificultades para el padre no custodio y la relación con sus hijos. Al quitarle automáticamente la autoridad que antes compartía con el otro progenitor, el padre no custodio experimenta la pérdida de un vínculo con sus hijos e hijas y, por lo general, minimiza el contacto con ellos. Muñoz Vázquez, *El significado social del divorcio y el sistema legal; Derecho de Familia y cambio social*, Centro Investigaciones Sociales U.P.R., 1984, pág. 8. Por su parte, los hijos de padres divorciados no tienen acceso libre al padre no custodio y carecen de contactos más frecuentes con él. Colón, *Patrones de relaciones filiales y factores que facilitan u obstaculizan su implementación*, Oficina Servicios Sociales, Relaciones de Familia, Centro Judicial San Juan, 1984.

En *Sterzinger* v. *Ramírez*, 116 D.P.R. 762, 773 (1985), este Tribunal reconoció que las relaciones paterno-filiales constituyen una de las áreas de mayor conflicto en las relaciones post divorcio. Señalamos lo siguiente:

> Cuando el tribunal le otorga la custodia a un padre y concede derecho de visita al otro, esto automáticamente tiene un efecto real sobre las relaciones del progenitor no custodio con el menor. El padre no custodio pierde cierta autoridad real sobre los hijos, que antes compartía con el ex cónyuge, desaparece la libertad de compartir y disfrutar con ellos en cualquier momento que desee. A medida que los patrones familiares han cambiado en nuestro país y los padres comparten más el cuidado de sus hijos y las tareas en el hogar, más profundo resulta el impacto de la separación para el progenitor no custodio como para los hijos.

La transformación económica de Puerto Rico y, particularmente, la incorporación de la mujer al trabajo asalariado han propiciado cambios profundos en la condición de la mujer en la familia y en la sociedad. Igualmente se ha iniciado un proceso de cambio en la relación social entre los sexos. Véanse: I. Picó, *Estudio sobre el empleo de la mujer en Puerto Rico,* 19 Rev. Ciencias Sociales 141–156 (1975) ; Rivera, *Incorporación en el desarrollo del capitalismo,* en Acosta-Belén (editora), *La mujer en la sociedad puertorriqueña,* 1980. La imagen y realidad del varón como proveedor económico y jefe de la familia y de la mujer como única responsable de la crianza de los hijos ya no prevalece en todos los sectores del país. Cada vez más van surgiendo familias en donde ambos padres comparten la crianza de los hijos y contribuyen con sus ingresos al mantenimiento de la familia.

A tenor con la nueva realidad social y económica muchas parejas prefieren continuar compartiendo la responsabilidad sobre la crianza de los hijos luego del divorcio. Cox, *Joint Custody: Dividing the Indivisible,* 1986 Utah L. Rev. 577, 578 (1986). Cuando los progenitores son capaces de ponerse de acuerdo y de compartir la patria potestad y la custodia, el tribunal debe facilitarles el camino:

> [C]ontrario a lo que se cree, la custodia compartida, mediante la cual los excónyuges [*sic*] comparten la responsabilidad y el control sobre sus hijos comunes, no causa automáticamente problemas de tirantez y disputas entre ambos adultos involucrados. El éxito de este tipo de custodia es una probabilidad real que depende, como en todo tipo de custodia, de cuán adecuado sea el plan escogido para la situación particular. *Apuntes sobre procedimientos judiciales en torno a la familia, op. cit.,* pág. 146.

Véase también Luepritz, *Child Custody* (1982).

Finalmente, la tendencia moderna en otras jurisdicciones favorece la patria potestad y la custodia compartida. Por ejemplo, en España, bajo la nueva legislación de familia, se

sigue el principio del beneficio del menor, pero se dejan inicialmente las decisiones a los padres sujeto a la aprobación y/o modificación o regulación por el tribunal. La legislación asume que la terminación de la vida matrimonial no es motivo para la privación de la patria potestad, por lo que se debe permitir, especialmente cuando ambos padres están de acuerdo, que se comparta sujeto a que no surja causa o motivo para la privación o suspensión. Código Civil de España, Art. 90.

En Estados Unidos el concepto de custodia incluye el control y el derecho para tomar decisiones sobre su persona (*legal custody*) y la tenencia física (*physical custody*). Alrededor de treinta estados han aprobado legislación para facilitar la custodia compartida; Folberg y Gratam, *Joint Custody of Children Following Divorce*, 12 U.C.D. L. Rev. 523 (1979), (¹) y los tribunales han interpretado liberalmente el alcance de la custodia compartida. J. Folberg, *Joint Custody Law—The Second Wave*, 23 J. Fam. L. 1, 3 (1984–1985). (²)

---

(¹) "Child custody law following divorce is being recast in state legislatures and courtrooms throughout the United States. Prompted by evolving parental expectations and roles, the law is changing to reflect new post-divorce family patterns and sensitivity to issues of gender equality. The dramatic changes in the law of custody are part of a second wave *following the no-fault divorce movement* of the past decade in which the grounds for divorce were reshaped to comport with the reality of marital breakdown. The recasting of custody law is not yet complete, but trends are discernible and common issues are emerging." (Énfasis nuestro.) J. Folberg, *Joint Custody Law—The Second Wave*, 23 J. Fam. L. 1 (1984–1985). Véanse también: D. Freed y H. Foster, *Divorce in the Fifty States: An Overview*, 14 Fam. L.Q. 229 (1980); H. Robinson, *Joint Custody: An Idea Whose Time Has Come*, 21 J. Fam. L. 641 (1982–1983); J. Atkinson, *Criteria for Deciding Child Custody in the Trial and Appellate Courts*, 18 Fam. L.Q. 1 (1984).

(²) Por ejemplo, el Tribunal Supremo de Nueva Jersey expresó sobre la custodia compartida en *Beck* v. *Beck*, 86 N.J., 432 A.2d 63, 65–66 (1981), lo siguiente:

"Properly analyzed, joint custody is comprised of two elements—legal custody and physical custody. Under a joint custody arrangement legal custody—the legal authority and responsibility for making 'major' decisions regarding the child's welfare—is shared at all times by both parents. Physical custody, the logistical arrangement whereby the parents share the compan-

En California se ha establecido una presunción a favor de la custodia compartida. ([3]) La presunción californiana implica que la estipulación o convenio por sí solo es suficiente para demostrar que los padres tienen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de cuidar los hijos conjuntamente. No obstante, al otorgar o denegar la custodia compartida el tribunal está sujeto al criterio del mejor interés del menor. El tribunal deberá tomar en consideración, entre otros factores pertinentes, los siguientes:

1. la salud, seguridad y bienestar del menor;
2. el historial, si alguno, de abuso contra los hijos;
3. la naturaleza y cantidad del contacto o relación de los hijos con ambos padres. 12A Cal. Civ. Code Sec. 4608 (1984).

Examinados estos desarrollos socioeconómicos en Puerto Rico y la experiencia en otros países, procedamos a estudiar el ordenamiento jurídico vigente en nuestro país.

## IV

En *Figueroa Ferrer* v. *E.L.A.*, supra, pág. 277, este Tribunal no se manifestó sobre la aplicación del divorcio por consentimiento mutuo a matrimonios con hijos:

> . Ya que en este caso no median hijos no hacemos pronunciamiento alguno sobre la medida, si alguna, en que debe variar el análisis aquí hecho de ser otras las circunstancias de la controversia.

---

ionship of the child and are responsible for 'minor' day-to-day decisions, may be alternated in accordance with the needs of the parties and the children."

([3]) La Sec. 4600.5 del Código Civil dispone lo siguiente:

"(a) There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child *subject to Section 4608* where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of a minor child of the marriage." 12A Cal. Civ. Code Sec. 4600.5 (1984).

No empece la ausencia de una directriz al respecto, los tribunales de instancia han venido otorgando el divorcio por consentimiento mutuo a matrimonios con hijos menores de edad. (⁴) En ocasiones se han aplicado a estos casos requisitos procesales establecidos en el Art. 97 del Código Civil para divorcios por las causales de abandono y trato cruel e injuria grave cuando hubiere hijos menores en el matrimonio que se intenta disolver. Además, los jueces han requerido un convenio de patria potestad, custodia, pensión alimenticia y relaciones paterno filiales como parte de la estipulación sin la cual no se acepta la petición de divorcio. Al decidir el caso ante nuestra consideración, se amplía el alcance de la opinión de *Figueroa Ferrer* v. *E.L.A.*, supra, para cubrir matrimonios con hijos menores y se establecen las medidas para la tramitación de la petición de divorcio por consentimiento mutuo ante estas circunstancias.

Al examinar este problema, nuestro punto de partida tiene que ser el Art. 107 del Código Civil, 31 L.P.R.A. sec. 383, que regula la custodia:

> En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos.

Recientemente, este Tribunal en *Guadalupe Viera* v. *Morell*, 115 D.P.R. 4, 13 esc. 5 (1983), por medio de un escolio expresó que "disuelto por divorcio el matrimonio entre los

---

(⁴) Los datos estadísticos de la Oficina de Administración de los Tribunales demuestran que el divorcio por consentimiento mutuo se ha otorgado en forma bastante generalizada a matrimonios con hijos menores. En 1979–1980, por ejemplo, los padres de un total de 2,911 hijos menores se divorciaron por consentimiento mutuo.

padres del hijo no emancipado, la patria potestad y custodia han de adjudicarse al padre o a la madre, según lo determine el tribunal en su sentencia, pero no a ambos". El Tribunal entendió que considerado el texto del Art. 107, según fue enmendado en 1976, la patria potestad y custodia compartida no podía decretarse post divorcio.

Debido a que la anterior expresión no era necesaria para resolver la controversia que estaba ante nuestra consideración, la misma no constituye un precedente que nos obligue, por lo que en esta ocasión debemos expresamente reconsiderar y limitar su alcance. Por eso estamos de acuerdo con los fundamentos jurídicos aducidos en la opinión del Tribunal en torno al principio de la patria potestad y la custodia compartida. La facultad de los tribunales va desde la atribución total del ejercicio de la patria potestad y la custodia a uno de los progenitores hasta la equilibrada distribución entre ambos de las facultades que las integran. La intención legislativa del Art. 107 enmendado fue claramente adoptar el criterio del mejor bienestar de los menores en el proceso de adjudicación de la custodia post divorcio. Por lo tanto, el tribunal puede, en la consecución de este legítimo fin, otorgar la patria potestad y la custodia compartida a ambos progenitores si éstos así lo acuerdan. Esto no implica que el tribunal, en bienestar del menor, no pueda ordenar una u otra forma de patria potestad y de custodia, aun contra la voluntad de una de las partes o de ambas.

Anteriormente, la naturaleza adversativa y contenciosa del proceso de divorcio había dictado la norma general de que los hijos menores serían puestos bajo la patria potestad y la custodia de la parte a favor de la cual se hubiere dictado la sentencia. Dicho precepto nunca impidió que el tribunal concediera la custodia bajo el principio de los mejores intereses del menor. En *Rodríguez* v. *Gerena*, 75 D.P.R. 900, 901 (1954), expresamos lo siguiente:

La disposición del Código Civil invocada por el apelante no destruye o restringe el poder de los tribunales para adoptar las medidas necesarias en cuanto a la custodia de los hijos menores, con el fin de lograr y proteger su bienestar y sus mejores intereses.

Con la enmienda al Art. 107 efectuada en 1976 se eliminó toda consideración sobre la culpabilidad en el divorcio como criterio para conceder la patria potestad y custodia y se adoptó la norma del mejor bienestar del menor. Si el tribunal entiende que los intereses del menor están mejor servidos con la patria potestad y la custodia compartida, ¿por qué no permitirlo? La disposición estatutaria no lo prohíbe. La Exposición de Motivos de la Ley Núm. 100 de 2 de enero de 1976, lo alienta al señalar que "el menor tiene derecho a gozar de la vida más saludable y satisfactoria posible luego del divorcio de sus padres. Tiene derecho a quedar lo menos afectado posible en el fracaso matrimonial de sus padres". El propósito del divorcio es disolver el matrimonio, no terminar con las relaciones entre los padres y sus hijos.

Nuestra jurisprudencia también establece que al momento del divorcio, la custodia de los menores se concede de acuerdo con el bienestar general del menor. *Marrero Reyes* v. *García Ramírez*, 105 D.P.R. 90 (1976). En dicho caso expresamos que los tribunales deben examinar los siguientes factores al resolver una controversia de custodia: la preferencia del menor, su sexo, edad y salud mental y física; el cariño que puede brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes. Se añadió que "[n]ingún factor es de por sí decisivo. Hay que sopesarlos todos para juzgar de qué lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en asunto

de tan extrema dificultad". *Marrero Reyes* v. *García Ramírez*, supra, págs. 105–106.

En *Figueroa Ferrer* v. *E.L.A.*, supra, se eliminó el carácter adversativo del procedimiento de divorcio señalándose que no tienen que mediar partes adversas ni existir una parte inocente y otra culpable. También reconocimos que el derecho a la intimidad limita la intervención del Estado dentro del ámbito de las relaciones familiares. Dentro de este contexto no tiene sentido una determinación de custodia dependiendo de la adjudicación de la culpabilidad ni la existencia de un sistema de custodia única en el cual se otorgue invariablemente la patria potestad y la custodia a uno de los progenitores y al otro el derecho de visita.

Del análisis anterior se desprende que en los casos de divorcio por consentimiento mutuo, donde hay hijos menores, el convenio sobre patria potestad, custodia y pensión alimenticia, debe ser parte esencial de la estipulación que se incluirá con la petición de divorcio. El tribunal deberá examinar cuidadosamente dicho convenio para verificar que el mismo no haya sido producto de coacción o presiones indebidas por parte de uno de los cónyuges. Al estudiar el acuerdo se debe evitar en lo posible una investigación que viole tanto los derechos de intimidad de las partes como la dignidad de cada uno.

Cuando en el convenio se acuerde compartir la custodia y patria potestad se debe inicialmente asumir que tal acuerdo favorece el mejor interés del menor. Teniendo ambos padres igualdad de derechos y deberes sobre sus hijos, se debe en lo posible mantener la continuidad de esas relaciones, aun cuando se rompa el vínculo matrimonial de los padres.

La custodia y patria potestad compartida tiene muchas ventajas en aquellos casos donde los padres expresan el deseo y tienen la capacidad para cumplir responsablemente sus obligaciones. En primer lugar, evita las batallas largas, costosas y destructivas para obtener la custodia de los menores. También amplía las oportunidades de los hijos al facilitarles la

convivencia con sus padres y recibir el afecto y la atención de ambos. Esto a su vez facilita la continuidad y fortalecimiento de los vínculos afectivos que deben caracterizar una buena relación paterno o materno-filial. Véanse: E. González Tejera, *Bienestar del menor: Señalamientos en torno a la patria potestad, custodia y adopción*, 54 Rev. Jur. U.P.R. 409, 460–461 (1985) ; Cox, *op. cit.*

Por otro lado, conlleva mayores responsabilidades para ambos ex cónyuges. Requiere que ambos entiendan que las decisiones sobre el bienestar de los menores deberán ser compartidas y que es indispensable que se establezcan unas relaciones post divorcio que faciliten la comunicación y los acuerdos entre ellos.

Sin embargo, esto no implica una renuncia por parte del tribunal al ejercicio de su poder de *parens patriae*. El tribunal *deberá* verificar si el convenio regulador de la custodia patria potestad es realmente en beneficio de los menores. A los abogados y a los jueces que intervengan en estos casos les corresponde el deber de orientar a las partes acerca de los derechos y obligaciones que exigen la custodia compartida. Al momento de considerar la petición, los jueces deben asegurarse que las partes entienden sus respectivas responsabilidades cuando comparten la patria potestad y la custodia y que voluntariamente han convenido que esto es lo más beneficioso para los niños.

Una vez se aprueba este convenio regulador, los magistrados deben establecer unos mecanismos para atender con carácter prioritario, los conflictos entre padres que requieren intervención judicial tanto para poner en vigor su dictamen original como reconsiderarlos de surgir conflictos insalvables.

Finalmente, estamos también en conformidad con el requisito de que el convenio debe ser específico y detallado de modo que incluya, entre otros aspectos pertinentes, el lugar de residencia y el tiempo que pasarán los hijos con sus respectivos padres, la persona responsable legal y económica-

mente de las necesidades inmediatas de los hijos, en especial, el modo como resolverán los posibles conflictos o discrepancias, [5] y cualquier otra disposición que a la luz de las circunstancias particulares de los menores sean necesarias para asegurar su bienestar.

Por los fundamentos expuestos en este voto particular, estoy de acuerdo con el dictamen final de la opinión del Tribunal.

---

[5] Véase *Sterzinger* v. *Ramírez,* 116 D.P.R. 762, 777 esc. 5 (1985).