CARLOS VIERA GONZALEZ
Peticionario-Apelado

v.

GILDA MALDONADO DIAZ
Peticionada-Apelante

Núm. KLAN-95-00808

San Juan, Puerto Rico, a 14 de febrero de 1996

Panel Especial integrado por su presidenta, la Jueza Ramos Buonomo,

la Jueza Rodríguez de Oronoz y el Juez Cordero

Ramos Buonomo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 26 de julio de 1995 la señora Gilda Maldonado Díaz instó un recurso de *certiorari* ante nos para revisar dos órdenes de protección dictadas por el Tribunal de Primera Instancia, Sala Municipal de julio de 1995, que la privaron provisionalmente de la custodia de su hijo Emmanuel José Viera Maldonado, sin haberle dado la oportunidad de ser oída y sin proveer relaciones materno filiales.

El recurso fue traído a la atención del panel de jueces presidido por el Hon. Rafael Ortiz Carrión el 12 de septiembre de 1995 ▮ y el Tribunal emitió una orden el día 14 de septiembre de 1995 para que, en un plazo de 15 días, las partes mostraran causa por la cual no deba expedirse el auto solicitado o desestimarse por falta de jurisdicción en virtud de la Ley Núm. 140 de 23 de julio de 1974. según surge de los autos dicha orden no fue notificada a la parte recurrida y ésta no se ha expresado. A pesar de ello, por lo que expondremos más adelante, estamos en posición de resolver.

La peticionaria señala en su recurso que el Tribunal de Primera Instancia cometió los siguientes errores:

*"Primer Error*

*Erró el Tribunal de Primera Instancia, Sala Municipal de Bayamón, al emitir una orden que trasciende la autoridad conferida por la Ley Núm. 140 de 23 de julio de 1974, conocida por "Ley de Controversias y Estados Provisionales de Derecho".*

*Segundo Error*

*Erró el Tribunal de Primera Instancia, Sala Municipal de Bayamón, al emitir una orden que privó de la custodia de su hijo menor a una madre, negándole el derecho de ser oída, y ni siquiera establecer relaciones materno filiales, constituyendo una crasa violación al debido proceso de ley."*

## I

De entrada es de rigor señalar que en la fecha que fue traído este recurso a la atención de este panel, día 12 de diciembre de 1995, el mismo es académico ya que las órdenes de protección emitidas por el tribunal los días 6 y 7 de julio de 1995 disponen que su vigencia será hasta los días 25 de septiembre y 6 de octubre de 1995, respectivamente. Veamos entonces cuál es el efecto de lo anterior en relación a la patria potestad y custodia de los dos hijos menores de las partes.

El artículo 152 del Código Civil, 31 L.P.R.A. sec. 591, establece la regla general de que la patria potestad sobre los hijos no emancipados corresponde a ambos padres en el supuesto que estén casados. *Ex parte Torres Oneda,* 118 D.P.R. 469 (1987).

La patria potestad constituye el conjunto de los deberes y facultades que la ley concede al padre y a la madre sobre la persona y sobre los bienes de las hijas e hijos menores no emancipados, como medio de realizar la función natural que les incumbe de educar y proteger la prole. La custodia es un atributo inherente a la patria potestad y se refiere a la tenencia física del menor, a la atención de sus intereses inmediatos cotidianos: *Ex parte Torres Oneda.*

Los artículos 152 y 153 del Código Civil, 31 L.P.R.A. secs. 591 y 592, configuran el contenido y alcance de los conceptos *"patria potestad"* y *"custodia"* de los hijos e hijas menores de edad.

Por otro lado, la custodia es un componente de la patria potestad, pues ésta impone a los padres el deber primario de tener sus hijos no emancipados en su compañía. Art. 153 del C.C., *supra*. Por ello los que ostentan la patria potestad tienen también la custodia.

A tenor con los anteriores hechos y el derecho vigente, de estar aún casada la peticionaria con el recurrido, corresponde a ambos padres la custodia y patria potestad de sus hijos Carlos Alberto y Emmanuel José. De estar las partes viviendo en residencias separadas, deberán pedir al tribunal las medidas provisionales que correspondan en relación a la custodia y patria potestad de cada uno de sus hijos así como relaciones materno o paterno filiales.

A pesar de que no es necesario para disponer de este recurso que entremos a dilucidar si los errores señalados se cometieron, no obstante, por tratarse de un caso bajo la Ley Núm. 54 de 15 de agosto de 1989, conocida como la Ley para la Prevención e Intervención con la Violencia Doméstica ■ (en adelante *("Ley 54")*, y siendo éste un problema social de gran magnitud en Puerto Rico, procedemos a discutir someramente los errores señalados. En primer término, el Tribunal de Primera Instancia, Sala Municipal, tiene, bajo la Ley de la Judicatura de 1994, autoridad y competencia para atender casos de violencia doméstica. Véase el Art. 5.004, inciso (I)(c)(4). Además, la propia Ley 54 dispone específicamente que el juez o la jueza municipal podrá dictar una orden de protección además de poderla dictar cualquier juez o jueza del Tribunal de Primera Instancia. 8 L.P.R.A. sec. 622. Por ello el primer error señalado no fue cometido.

Por otro lado, si bien es cierto que la Sala Municipal tiene competencia bajo la Ley 54 para conceder la custodia provisional de los niños al padre o a la madre, según ésta corresponda, y relaciones paterno o materno filiales, ello debe hacerse siguiendo los procedimientos que la misma ley dispone. 8 L.P.R.A. secs. 621-628. Veamos.

Como sabemos, la Ley 54 establece un remedio civil, ágil para la obtención, a través del Tribunal de Primera Instancia, de órdenes dirigidas a la persona agresora para que se abstenga de realizar determinados actos con respecto a la persona maltratada sin que sea necesario radicar cargos criminales. Una vez se presenta una solicitud de orden de protección, el tribunal debe expedir una citación a las partes, bajo apercibimiento de desacato, para que comparezcan dentro de un término que no exceda de cinco días. 8 L.P.R.A. sec. 624.

No obstante, las órdenes de protección se pueden obtener también ex parte únicamente si se dan ciertas circunstancias: cuando se han hecho gestiones en forma diligente para notificar a la parte peticionaria con copia de la citación expedida por el tribunal y no se ha tenido éxito; si existe la probabilidad de que la notificación previa a la parte peticionada puede provocar el daño irreparable que se intenta prevenir; o si la parte peticionaria demuestra que existe una probabilidad sustancial de

riesgo inmediato de maltrato. 8 L.P.R.A. sec. 625.

La ley dispone que estas órdenes ex parte deben ser provisionales. Una vez expedidas, el tribunal debe celebrar una vista dentro de los cinco días siguientes de haberse expedido la orden ex parte. En la vista el tribunal puede dejar sin efecto la orden o extender sus efectos por el tiempo que el tribunal estime necesario. 8 L.P.R.A. sec. 625.

Por otro lado, al expedir una orden de protección, todos los jueces y todas las juezas de primera instancia están igualmente facultados para tomar determinaciones relativas a los hijos e hijas de las partes y a sus propiedades. Pueden adjudicar la custodia provisional de aquéllos a la parte peticionaria y ordenar el pago de pensiones alimentarias, incluso para la propia parte peticionaria. 8 L.P.R.A. sec. 621.

En el caso ante nos, no surge que la Sala Municipal haya seguido este procedimiento. Por el contrario, la orden de protección dictada ex parte el 6 de julio de 1995 se emitió sin que se dieran las circunstancias que dispone la ley. 8 L.P.R.A. sec. 625. No se citó debidamente a la madre peticionada y sin dar explicación o razón alguna se privó a la madre de la custodia de su hijo Emmanuel José, sin conceder relaciones materno filiales, señalándose una vista para el 25 de septiembre de 1995, es decir, a los 81 días de haberse expedido la orden ex-parte, violentando con ello la letra clara de la ley que dispone que la vista debe celebrarse dentro de los próximos cinco días de emitida la orden.

Tomamos conocimiento de que en el Tribunal de Primera Instancia, Sala Superior de Bayamón, caso civil Núm. DDI-95-2293, la peticionaria presentó el día 26 de octubre de 1995 una demanda de divorcio por trato cruel contra el recurrido.

La Ley Núm. 100 de 2 de junio de 1976 enmendó el Artículo 107 del Código Civil, 31 L.P.R.A. sec. 383, a los efectos de establecer que la custodia y patria potestad de los hijos menores se otorgará a la madre o al padre con quien, de acuerdo con el tribunal, "los mejores intereses y bienestar del menor quedarán mejor servidos". En *Marrero Reyes v. García*, 105 D.P.R. 90, 105 (1976), el Tribunal Supremo puntualizó: *"deben examinarse, entre otros, los siguientes factores: la preferencia del menor, su sexo, edad y salud mental y física; el cariño que pueda brindársele por las partes en controversia; la habilidad de las partes para satisfacer debidamente las necesidades objetivas, morales y económicas del menor; el grado de ajuste del menor al hogar; la escuela y la comunidad en que vive; la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y la salud psíquica de todas las partes."* En *Nudelman v. Ferrer*, 107 D.P.R. 495 (1978), el Tribunal se reafirmó sobre el particular.

En el capítulo *"Violencia Doméstica"* del informe El Discrimen por Razón de Género en los Tribunales, se expone lo siguiente:

*"Los factores señalados en Marrero y Nudelman, son críticos por cuanto tienen un impacto directo sobre las niñas y los niños y sobre sus relaciones con otros miembros de la familia. Sin embargo, existe un factor que está directamente relacionado con la custodia que no parece en esa lista de criterios: la violencia doméstica. Aunque no se trata de una lista cerrada, ya que el Tribunal señala que estos factores se examinarán "entre otros", el hecho de que dicho factor no aparezca expresamente mencionado [podría llevar al tribunal] a pensar que sólo se debe considerar en estos casos la violencia dirigida directamente hacia los hijos e hijas, entendiendo que es irrelevante la agresión que pueda haber habido o que pueda continuar habiendo entre los miembros de la pareja...."*

*La violencia doméstica afecta a los niños cognocitiva, emocional y físicamente. En otras palabras, los niños también son víctimas de ésta, aunque no vaya dirigida directamente a ellos, pues sufren enormemente al presenciar la agresión entre sus padres. Además, los niños aprenden de los padres, e imitan su comportamiento: pueden mostrar también una conducta abusiva hacia sus padres o imitar el patrón de violencia en sus propias relaciones. El carácter continuo de la violencia les refuerza la idea de que ésta es aceptable y es parte integral del proceso de convertirse en hombres. Por otro lado, hay riesgo de que los hijos que presencian la violencia doméstica sufran problemas psicológicos y de comportamiento.*

............

*En otras palabras, el tribunal **no debe ignorar el efecto negativo que la violencia doméstica ejerce sobre los menores y sobre el comportamiento post-divorcio de los progenitores entre sí y el de cada uno de ellos hacia los hijos e hijas cuando ha habido violencia entre los miembros de la pareja.** Debe investigar, además cómo la violencia doméstica podría afectar las relaciones paterno-materno filiales."* ■ (Enfasis suplido.)

El reconocimiento del problema de la patria potestad y la custodia y la violencia doméstica motivó al Congreso de los Estados Unidos a proponer la Resolución Conjunta 172, aprobada por la Cámara de Representantes el 27 de septiembre de 1990 y por el Senado el 25 de octubre de 1990, que exhorta a los tribunales estatales a considerar la violencia doméstica en las determinaciones de custodia. Los tribunales estatales estadounidenses han comenzado a considerar dicho factor en las decisiones sobre custodia. ■

Es pertinente y muy importante que el Tribunal de Primera Instancia, Sala Superior de Bayamón, tome en consideración no sólo los criterios expuestos en M*arrero y Nudelman, supra,* sino también los incidentes de violencia doméstica habidos entre las partes al hacer su determinación de patria potestad y custodia de los niños y relaciones paterno o materno-filiales.

Además, en el caso de divorcio debe tomarse conocimiento de que en el recurso de *certiorari* presentado en este Tribunal por la madre peticionaria, se hace constar que ella se ha tratado de suicidar seis veces, alegadamente por el maltrato del padre recurrido... Estos hechos deben ser tomados en consideración por el tribunal de entender que es necesario hacer un estudio por la oficina de relaciones de familia del tribunal.

## II

Por todo lo anterior, se deniega la expedición del recurso de *certiorari* por haberse tornado en académico ya que las órdenes de protección que dan origen al recurso perdieron su vigencia los días 25 de·septiembre y 6 de octubre de 1995, respectivamente.

Lo acordó el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 96 DTA 90

**1.** Hons. Charles A. Cordero y Frank Rodríguez García.

**2.** 28 L.P.R.A. sec. 601 *et seq.*

**3.** Véase *El Discrimen por Razón de Género en los Tribunales,* informe presentado por la Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico en la Conferencia Judicial de 1995, a las págs. 328-330.

**4.** *Id.,* a la pág. 330.