# 2006 DTA 7

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**
**PANEL XII**

MILAGROS PATRICIA RIVERA RÍOS
Apelante

v.

ARTURO JOSÉ RIVERA MOLINA
Apelado

Núm. KLAN-05-00985

San Juan, Puerto Rico, a 24 de octubre de 2005

Panel integrado por su Presidente, el Juez Cordero,
el Juez Aponte Jiménez y la Juez Cotto Vives

Cordero, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

La apelante Sra. Milagros Rivera Ríos recurre de la *Resolución* emitida el 4 de agosto de 2005, por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, "*el TPI*"). Por razón de su dictamen, notificado por telefax en igual fecha, el TPI modificó la custodia del hijo de la Sra. Milagros Rivera Ríos y el Sr. Arturo Rivera Molina, el menor ALRR, a una custodia compartida y ordenó su ingreso a la escuela Antilles Consolidated School System en el Fuerte Buchannan.

**I**

La Sra. Milagros Rivera Ríos (en adelante, "*la señora Rivera Ríos*" o "*la madre*") y el Sr. Arturo Rivera Molina (en adelante, "*el señor Rivera Molina*" o "*el padre*") contrajeron matrimonio en Río Piedras, Puerto Rico, el día 22 de diciembre de 1997. Durante su matrimonio, éstos procrearon un hijo, el menor ALRR, nacido el 3 de abril de 1998.

Presentada por las partes de epígrafe una *Petición* de divorcio por consentimiento mutuo, el 25 de enero de 2002, luego de varios incidentes procesales, ambas partes comparecieron a la vista del juicio en su fondo asegurando estar de acuerdo en disolver su vínculo matrimonial. Así pues, el 1 de febrero de 2002, el TPI decretó roto y disuelto el vínculo matrimonial existente hasta ese momento entre la señora Rivera Ríos y el señor Rivera Molina. En su *Sentencia*, conforme a lo estipulado por las partes en la *Petición* de divorcio, el TPI concedió a la señora Rivera Ríos la custodia del menor ALRR y la patria potestad a ambos padres, ha ser ejercida de manera compartida. De otra parte, en cuanto a las relaciones paterno-filiales, el TPI dispuso éstas se conformarían a los siguientes acuerdos:

"*El padre [el señor Rivera Molina] se relacionará con el menor durante los fines de semana alternos, recogiéndolo en casa de la co-peticionaria [la señora Rivera Ríos] el sábado al mediodía entregándolo el domingo a las 7:00 de la noche.*

*Las festividades navideñas se alternarán [la custodia] los co-peticionarios, comenzando el 2002 con la madre.*" (Añadido nuestro.)

Habiendo experimentado dificultades que afectaron las relaciones paterno-filiales, el 13 de enero de 2004, el señor Rivera Molina presentó *Moción Urgente de Desacato Sobre Incumplimiento de la Copeticionaria con las Relaciones Paterno-Filiales y en Solicitud Urgente de que se le Ordene Cumplir y/o Celebración de una Vista Urgente*. Contando con la oposición de la señora Rivera Ríos a lo solicitado, el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "*Tribunal*"), refirió el caso a la atención del Programa de Relaciones de Familia, **[1]** el cual rindió su Informe Social Forense (en adelante, "*Informe Social*") como parte de la reevaluación del caso.

Enterado del contenido del Informe Social, el señor Rivera Molina presentó *Moción en Relación con el Informe Social y en Solicitud Urgente para que se Señale una Vista*. En su escrito, bajo el título de *Propuestas Adicionales del Compareciente*, en lo pertinente, éste informó al Tribunal que entre las partes existían diferencias sobre las necesidades educativas del menor ALRR y el lugar donde habría de comenzar estudios durante el primer semestre del año escolar 2004-2005. Para entonces, el menor cursaba el kindergarten en el Colegio Reina de los Ángeles. Sin embargo, el padre advirtió que, de una parte, la madre le había reservado al

menor un lugar en el Colegio Nuestra Señora del Carmen, **[2]** mientras que él había hecho lo mismo en la Antilles Consolidated School System (en adelante, *"escuela de Buchanan"*). **[3]** En consecuencia, el señor Rivera Molina solicitó se le otorgase la custodia compartida del menor.

Ante dicha iniciativa, la señora Rivera Ríos se opuso por entender que se trataba de dilucidar controversias nuevas que no debían ser atendidas en ese procedimiento. Atendido el asunto, el 4 de agosto de 2004, el Tribunal emitió *Orden* disponiendo que: *"[e]l asunto del colegio donde estudiará el menor es nuevo, así como la solicitud de custodia compartida"*. Sin embargo, es menester mencionar que finalmente el menor ALRR ingresó al Colegio Nuestra Señora del Carmen en el año escolar 2004-2005, durante el cual cursó el primer grado.

Finalmente, evaluados el Informe Social y los escritos de las partes, el TPI emitió *Resolución* **[4]** en la que modificó el plan de relaciones paterno-filiales establecido en la *Sentencia* de divorcio. Configurado un nuevo plan, por entender que el anterior resultaba ambiguo y confuso, el Tribunal trazó medidas específicas a una variedad de circunstancias particulares, entre éstas: el día de los padres, el día de las madres, acción de gracias, navidad, reyes, año nuevo, vacaciones escolares, visitas al colegio para recoger al menor y viajes al extranjero. **[5]** Además, como parte de su determinación, el Tribunal ordenó a los comparecientes el buscar ayuda profesional para establecer una comunicación adecuada como padres y adultos, para discutir los asuntos relacionados con el menor.

Entendiendo que había quedado sin atenderse el asunto de la escuela a la que ingresaría el menor ALRR, el 11 de mayo de 2005, el padre presentó ante el TPI una *Moción en Solicitud de Custodia Compartida*. En su escrito, el señor Rivera Molina informó que al menor ALRR no se le había rematriculado en el Colegio Nuestra Señora del Carmen y reiteró su preocupación sobre su desempeño académico. Así pues, aludida la proximidad del nuevo año escolar 2005-2006, solicitó la intervención urgente del TPI para adjudicar la custodia compartida del menor ALRR y su ingreso a la escuela de Buchanan. Por su parte, el 5 de julio de 2005, la señora Rivera Ríos se opuso a la solicitud de custodia compartida, aduciendo que: 1) la petición de custodia compartida respondía al único fin de que el señor Rivera Molina se ahorrase los gastos escolares; 2) ésta se encontraba dispuesta a considerar la escuela de Buchanan durante el nivel escolar secundario, pero al momento auscultaba otras alternativas, como el reingreso al Colegio Nuestra Señora del Carmen y la Casa Montesorri de Niños de Cupey Gardens (en adelante, *"Casa Montesorri"*), y 3) el menor no tenía madurez académica para asistir a la escuela de Buchanan.

Atendidos los planteamientos de las partes, como hemos mencionado, el 4 de agosto de 2005, el TPI emitió *Resolución* por la que modificó la custodia del menor ALRR. En ésta, el TPI hizo constar que durante el año escolar 2004-2005, el menor ALRR obtuvo un promedio general de B y que sus evaluaciones psicológicas demostraban estar capacitado para realizar labores académicas a tenor con su edad. Además, consideró factores como la patria potestad compartida entre ambos padres, la cual conlleva la potestad de decidir sobre la educación del menor, y la renuncia del señor Rivera Molina de solicitar: 1) la reducción de la pensión establecida; o 2) la modificación del plan de relaciones paterno-filiales. Referente la escuela de Buchanan, subrayó el hecho de que el señor Rivera Molina es egresado de dicha escuela, que ésta ofrece cursos hasta el cuarto año de escuela superior y que le provee transporte escolar al menor, sistema de traslado al cual el niño está acostumbrado. Finalmente, en cuanto a la Casa Montesorri destacó que, si bien dicho colegio está bastante comprometido con el sistema tradicional de enseñanza, los estudiantes sólo pueden cursar hasta el sexto grado, cuando deberán pasar a una escuela bajo el sistema tradicional.

Así pues, en ausencia de un acuerdo entre los padres, el TPI ejerció su poder de *parens patriae* y determinó que la escuela de Buchanan representaba la institución educativa en mejor beneficio del menor. En lo pertinente, éste expresó:

*"La razón por la cual la promovida se opone a que Arturo vaya al Fuerte Buchanan es porque en esta etapa de su vida éste no tiene lo que ella llamó "madurez académica" para estudiar en esa escuela, la que catalogó tiene un sistema "independiente e individualizado". Sin embargo, de la prueba desfilada surge que el progreso académico de [ALRR] durante el pasado año escolar [2004-2005] y sus evaluaciones psicológicas sostienen lo contrario, en cuanto a la "madurez" o aptitud académica. Con respecto al método o sistema de enseñanza de [la escuela de Buchanan], la promovida nada indicó que nos incline a concluir que no es adecuado ni beneficioso para el menor o que lo vaya a perjudicar académicamente o socialmente. Por ende, estamos obligados a concluir que el cambio [del Colegio Nuestra Señora del Carmen a la escuela de Buchanan] redunda en el mejor interés de [ALRR]. En vista de ello, esta es la escuela a la que debe asistir el menor."*

Resuelto lo anterior, el TPI dirimió la solicitud del señor Rivera Molina sobre custodia compartida. A tales efectos: 1) considerados los elementos distinguidos por nuestro Tribunal Supremo en el caso *Torres, Ex parte*, 118 D.P.R. 469 (1987); 2) estipulado el tiempo que cada padre compartiría con el menor ALRR; y 3) concluido que la mejor escuela para éste era la escuela de Buchanan, el TPI determinó que procedía declarar, y en efecto declaró, *"Con Lugar"* la solicitud de custodia compartida, requisito indispensable para que el niño se pudiese beneficiar de esa escuela. Al así actuar, el TPI añadió que:

*"Este Tribunal no pasa por alto que en el presente caso no se dan algunos de los elementos a considerar, según exigidos en [Torres, Ex parte], id., como por ejemplo, que entre los padres haya una excelente comunicación y que no medien desavenencias entre ellos. Podríamos inferir que el hecho de que no mediara un acuerdo entre los padres, con respecto a qué escuela debe asistir el niño, es indicio de que no existe una buena comunicación. Sin embargo, nos parece sumamente injusto para [ALRR] que por considerar que unos padres no pudieron comunicarse entre sí para decidir sobre lo que más beneficia al niño, este Tribunal declare Sin Lugar la solicitud de custodia compartida y, por ende, [ALRR] no reciba el beneficio de estudiar en una mejor institución para él. Por ello se concede el remedio solicitado por [el señor Rivera Molina]. Después de todo, es el bienestar del niño el que debe prevalecer."* (Énfasis suplido.)

Inconforme con la determinación, el 9 de agosto de 2005, la señora Rivera Ríos presentó solicitud de *Reconsideración* ante el TPI, la cual fue adjudicada mediante *Orden* emitida el 12 de agosto de 2005 por vía telefónica, **[6]** reafirmando lo ya dispuesto sobre la custodia compartida y la escuela donde cursaría estudios el menor ALRR. Denegada su solicitud de reconsideración, la señora Rivera Ríos recurrió oportunamente ante este foro, en 12 de agosto de 2005, mediante *Escrito de Apelación Civil*, acompañado de *Moción Solicitando Remedio en Auxilio de Jurisdicción*. Ésta adujo que:

*"1. Erró el Tribunal de Primera Instancia al conceder la custodia compartida solicitada, unilateralmente, por el padre del menor [ALRR] sin que para ello se reúnan los requisitos determinados por nuestro más alto foro en el caso [Torres, Ex parte], para una disposición de esa naturaleza.*

*2. Erró el Tribunal de Primera Instancia al determinar que procura el bienestar del menor [ALRR] al determinar que "el cambio de escuela al fuerte Buchanan redunda en [su] mejor interés".*

*3. Erró el Tribunal de Primera Instancia al determinar que la escuela del Fuerte Buchanan es la institución educativa que mejor corresponde al bienestar de ALRR sin profundizar en las circunstancias particulares del menor a la luz de la prueba sometida y de la que obra en el record judicial."*

## II

Es preciso comenzar nuestro análisis señalando que nuestro Tribunal Supremo ha determinado que los dictámenes de custodia no constituyen cosa juzgada, ni son estrictamente interlocutorios. *Figueroa v. Del Rosario,* 147 D.P.R. 121, 129 (1998). Esta interpretación resulta mandatoria al considerar que un dictamen de

custodia resuelve una reclamación entre partes, sin reparo de que dicha determinación sea modificada mediante revisión judicial, por razón de circunstancias o hechos posteriores a la fecha en que se emitió el dictamen del caso. *Figueroa*, 147 D.P.R., a la pág. 129. Cónsono a lo anterior, nuestro más alto foro ha expresado que: "*tomando en consideración la naturaleza sui géneris de los pleitos de familia, resolvemos que los dictámenes de alimentos y de custodia que modifican o intentan modificar los dictámenes finales previos, por haber ocurrido un cambio en las circunstancias, constituyen propiamente sentencias*". *Figueroa*, 147 D.P.R., a la pág. 129.

Conocido es que lo referente al cuidado de hijos menores después del divorcio está reglamentado en el Art. 107 del Código Civil, 31 L.P.R.A. § 383 (en adelante "*Art. 107*"). En lo pertinente, el Art. 107 dispone que "*[e]n todos los casos de divorcio, los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos*". Sin embargo, dicho artículo reconoce el derecho de aquel padre ex-cónyuge que habiendo sido privado de la custodia desee recobrarla y prevé que el remedio adecuado será "*[demostrar] a satisfacción del tribunal que a los mejores intereses y bienestar de los menores conviene la referida recuperación de custodia*". (Énfasis suplido.) 31 L.P.R.A. § 383.

Así pues, en nuestra jurisdicción, las determinaciones en casos que involucren situaciones con menores de edad son analizadas bajo el palio del bienestar y mejor interés del Menor. [7] *Rexach v. Ramírez Vélez*, Op. de 15 de junio de 2004, **2004 J.T.S. 103**, a la pág. 1226. Más aún cuando se trata de procedimientos de custodia, en cuyo caso nuestro más alto foro ha reconocido que corresponde a los Tribunales, bajo el poder de *parens patriae* del Estado, velar por el mejor bienestar de los menores. *Pena v. Pena*, 152 D.P.R. 820, 832-833 (2000).

Respecto a éste aspecto, en *Ortiz García v. Meléndez Lugo*, Op. de 3 de marzo de 2005, **2005 J.T.S. 25**, a las págs. 779-780, nuestro Tribunal Supremo reiteró que:

"*En efecto, el poder para adjudicar la custodia que se encuentra en el Artículo 107 del Código Civil tiene su génesis en el ejercicio por los tribunales del poder de parens patriae, es decir, en el reconocido poder del Estado de proteger a los incapaces. El poder de parens patriae limita los derechos de otras partes, a fin de salvaguardar el bienestar de quien no puede abogar por los suyos. Es la función social y legal que el Estado asume y ejerce, en cumplimiento de su deber de brindar protección a los sectores más débiles de la sociedad. Es por ello que cualquier conflicto que un tribunal perciba entre intereses ajenos y el mejor interés de un menor deberá resolverse a favor del menor. (Énfasis en el original.)*

*Finalmente, nuestra doctrina jurisprudencial ha establecido los criterios que los juzgadores de instancia deberán considerar en el análisis de una solicitud de patria potestad y custodia compartida. Específicamente, en Torres, Ex parte, 118 D.P.R., a la pág. 482, el Tribunal Supremo enumeró una serie de factores que, ponderados según las circunstancias peculiares de cada caso, servirán para conceder o rechazar la solicitud de los padres de asumir la responsabilidad de criar a los hijos conjuntamente. Sin embargo, consciente de que su determinación "no es una panacea para curar los males del divorcio en los hijos", nuestro más alto foro inició su análisis señalando que "[a]bordamos el problema, haciéndonos eco de la expresión de Castán Vázquez, de que todo intento de definir un concepto "entraña dificultades y atrae peligros", pues "[d]efinir obliga a limitar".*" (Citas omitidas.) *Torres, Ex parte*, 118 D.P.R., a la pág. 472.

## III

Conocido es que los tribunales apelativos no debemos intervenir con las determinaciones de hechos ni el ejercicio de la discreción del TPI en la adjudicación de credibilidad en un caso, salvo que se demuestre que hubo un craso abuso de discreción o que el Tribunal actuó con prejuicio, parcialidad o error manifiesto. *Álvarez de Choudens v. Rivera Vázquez*, Op. de 17 de junio de 2005, **2005 J.T.S. 90**, a la pág. 1370.

Decidir lo que responde al mejor bienestar del menor entraña una gran responsabilidad. En el caso de autos, la intervención del TPI, en el ejercicio de su discreción y considerando la naturaleza de las alegaciones presentadas por las partes, resolvió que el ingreso del menor ALRR a la escuela de Buchanan redundaba en su mejor interés. No hay duda que fue basándose en esa determinación que el TPI, ausente de conflicto en cuanto al acuerdo del plan de relaciones paterno-filiales, concedió la custodia compartida.

Tomando en consideración los hechos del presente caso y nuestra política pública a favor de los mejores intereses y bienestar del menor, resolvemos que no se ha evidenciado ante nosotros circunstancias o elementos que justifiquen alterar la decisión del TPI. Ciertamente, del expediente ante nuestra consideración se desprende que el menor ALRR conoce y se ha adaptado al sistema de educación tradicional, en el que se desempeña de forma adecuada. Alegar que el señor Arturo Rivera Molina procura exclusivamente un beneficio económico al proponer que su hijo estudie en la escuela de Buchanan nos parece un planteamiento frívolo e infundado. De la simple lectura de los autos, resulta evidente que su interés es velar por el bienestar de su hijo.

Al igual que el *foro a quo*, exhortamos a la señora Rivera Ríos y al señor Rivera Molina recurrir al dialogo y otros mecanismos de acuerdo que propendan en el mejor bienestar del menor ALRR. Como en todo caso de divorcio por consentimiento mutuo donde hay hijos menores, en el caso de autos, el convenio sobre patria potestad, custodia y pensión alimenticia fue parte esencial y necesaria de las estipulaciones que por acuerdo se incluyeron en la petición de divorcio. Tenemos que presumir que al acordar la patria potestad compartida las partes actuaron de manera reflexiva, voluntaria y entendiendo que tal acuerdo conlleva mayores responsabilidades para ambos ex-cónyuges. Su acuerdo requiere que ambos entiendan que las decisiones sobre el bienestar del menor deberán ser compartidas.

Sirviéndonos de las palabras del Tribunal Supremo, enfatizamos que *"[e]n el área compleja del derecho de familia -eminentemente humana-, los mecanismos legales no pueden ser los únicos disponibles para resolver los conflictos. De ello deben estar conscientes todos los participantes, incluso los abogados"*. Torres, Ex parte, 118 D.P.R., a la pág. 484. Es indispensable que la señora Rivera Ríos y el señor Rivera Molina establezcan unas relaciones post divorcio que faciliten la comunicación y los acuerdos entre ellos.

**IV**

Por los fundamentos antes esbozados, se confirma en todos sus extremos la *Resolución* emitida el 4 de agosto de 2005, por el Tribunal de Primera Instancia, Sala Superior de Carolina.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones