ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| DANIEL MERCED MADER<br>Apelante<br><br>v.<br><br>LIZBEL SANTIAGO PINO<br>Apelada | KLAN202401058 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Trujillo Alto<br><br>Civil Núm.: TJ2022RF00024<br><br>Sobre: Divorcio-ruptura irreparable |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 17 de enero de 2025.

Comparece el señor Daniel Merced Mader (en adelante, "el señor Merced o el apelante") quien solicita que revoquemos la *Resolución Interlocutoria* emitida y notificada el 8 de noviembre de 2024. Mediante la misma, el Tribunal de Primera Instancia, Sala Superior de Trujillo Alto (en adelante, "el TPI o foro primario") reafirmó la adopción final de las recomendaciones del *Informe Social Forense*.

Por los fundamentos que expondremos a continuación, se confirma la *Resolución* apelada.

-I-

Surge del expediente que, el 22 de junio de 2022, el TPI emitió una *Sentencia* de divorcio por la causal de ruptura irreparable.[1] Mediante la misma disolvió el vínculo matrimonial entre el señor Merced y la señora

---

[1] Apéndice del apelante, anejo 18, págs. 72-73.

Lizbel Santiago Pino (en adelante, "señora Santiago o la apelada"). Además, otorgó la custodia monoparental del menor de edad a la señora Santiago y concedió la patria potestad compartida entre los ahora excónyuges.

Así las cosas, el 2 de agosto de 2022, el foro primario dictó *Resolución* en la cual acogió los acuerdos alcanzados por las partes sobre las relaciones paternofiliales.[2]

Tras varios trámites procesales, el 2 de enero de 2023, el TPI emitió una *Orden* donde refirió el presente caso a la Unidad Social de Relaciones de Familia y Asuntos de Menores (en adelante, "Unidad Social") para la realización de una evaluación forense sobre la custodia, las relaciones filiales y la patria potestad.[3]

En cumplimiento de orden, el 5 de abril de 2023, la Unidad Social presentó un *Informe Social Forense*[4] en el cual hizo constar las siguientes recomendaciones:

1. La custodia del joven la continúe ostentando la Sra. Lizbel J. Santiago Pino.

2. El adolescente continúe pernoctando en el hogar paterno de viernes a domingos alternos. El progenitor procure recogerlo a la salida del colegio y lo entregue a las 7:00pm en el hogar materno.

3. El periodo navideño se distribuya de la siguiente manera:
   ✓ Del 24 al 25 de diciembre de 2023, el menor pernocte con el padre y se alterne el plan cada año.
   ✓ Del 31 de diciembre de 2023 al 1 de enero de 2024, el menor pernocte con la madre y se alterne el plan cada año.
   ✓ Del 5 al 6 de enero de 2024, el menor pernocte con el padre y se alterne el plan cada año.

4. El día de Madres o de Padres, el menor se relacione con el progenitor que corresponda la festividad de 10:00am a 7:00pm.

5. El día de Acción de Gracias se alterne cada año comenzando con la madre en noviembre 2023. El

---

[2] *Íd.,* anejo 21, págs. 80-81.
[3] *Íd.,* anejo 45, pág. 154.
[4] *Íd.,* anejo 53, págs. 166-187.

menor comparta con el progenitor correspondiente ese año de 10:00am a 7:00pm.

6. El joven pueda comenzar a recibir terapias psicológicas como parte fundamental de su proceso de sanación y progreso debido a la separación y conflictos familiares.

7. La progenitora le informe al padre sobre todos los asuntos relevantes del menor. Esto incluye asuntos de la escuela, tutorías, enfermedades, viajes, citas médicas y comportamientos del menor, para que ejerzan la patria potestad en conjunto cumpliendo con los deberes y derechos que le corresponde a cada progenitor.

8. Las partes mantengan una comunicación cordial por el bienestar del joven. Deben considerar recurrir a terapia familiar para manejar los cambios o ajustes que están enfrentando como familia.

9. El tribunal le advierta al Sr. Daniel Meced [*sic*.] que se abstenga en consumir bebidas embriagantes cuando se lleven a cabo las relaciones filiales.

10. De las partes continuar en las controversias, se tendrían que ampliar las evaluaciones en sustancias que incluya alcohol.[5]

Ante esto, el 2 de mayo de 2023, el señor Merced presentó *Moción Impugnando el Informe Social*.[6] Allí alegó que el referido informe recoge unas recomendaciones que no están cimentadas en la prueba descubierta ni correlacionada con los presuntos hallazgos. Además, informó que había contratado los servicios periciales del doctor Larry Emil Alicea Rodríguez como trabajador social para que examinara el *Informe Social Forense*.

A la luz de lo anterior, el 26 de junio de 2023, el foro primario emitió *Orden* en la que concedió 20 días a las partes para que presentaran un informe de conferencia e indicó que su cumplimiento conllevaría el señalamiento de una vista de impugnación.[7]

---

[5] *Íd.,* anejo 53, págs. 186-187.
[6] *Íd.,* anejo 58, págs. 195-273.
[7] *Íd.,* anejo 72, pág. 299.

Sin embargo, el 2 de agosto de 2023, el TPI dictó *Orden* en la cual expuso lo siguiente:

EL 17 DE JULIO DE 2023 VENCIO EL TERMINO QUE TENIAN LAS PARTES PARA PRESENTAR EL INFORME DE CONFERENCIA PARA LA VISTA DE IMPUGNACION DE INFORME SOCIAL. LAS PARTES NO CUMPLIERON. MUESTREN CAUSA EN 20 DIAS LAS PARTES POR LO CUAL ESTE TRIBUNAL NO DEBA ACOGER COMO FINAL EL INFORME SOCIAL.[8]

Posteriormente, el 1 de septiembre de 2023, el foro primario emitió *Resolución* mediante la cual indicó:

El tribunal no ha podido señalar la vista de impugnación de informe social porque **en tres ocasiones el tribunal les ha pedido a las partes que presenten el informe de conferencia** (para que informen la prueba testifical y documental a ser utilizada en la vista) y **estos no han cumplido.**

[…]

Una vez más, las partes (**particularmente el demandante que es quien único desea impugnar el informe social forense**) hicieron caso omiso, tampoco se excusaron ni solicitaron prórroga para cumplir la orden de mostrar causa.[9]

En consecuencia, este acogió como finales las recomendaciones del *Informe Social Forense*.

El 30 de octubre de 2023, ante una solicitud de reconsideración, el TPI mediante *Orden* revocó la adopción final de las recomendaciones del *Informe Social Forense*.[10] Además, concedió a las partes 30 días para presentar el informe de conferencia y reiteró que una vez cumplido lo anterior, señalará una vista de impugnación.

Luego, el 4 de diciembre de 2023, el foro primario emitió *Orden* en la cual dictaminó lo que sigue:

**EL 29 DE NOVIEMBRE DE 2023 VENCIO EL TERMINO CONCEDIDO A LAS PARTES PARA PRESENTAR EL INFORME DE CONFERENCIA SIN QUE ESTOS HUBIEREN CUMPLIDO. EL INFORME SOCIAL QUE EL DEMANDANTE SE PROPONE IMPUGNAR YA TIENE 8 MESES Y AÚN NO SE HA PODIDO CELEBRAR LA VISTA DE IMPUGNACIÓN POR <u>RAZONES ATRIBUIBLES A LAS PARTES.</u>**

---

[8] *Íd.,* anejo 80, pág. 322.
[9] *Íd.,* anejo 87, pág. 403. (Énfasis en el original)
[10] *Íd.,* anejo 100, págs. 466-467.

> SENCILLAMENTE EL TRIBUNAL NO PUEDE ESTAR DETRAS DE LAS PARTES PARA QUE CUMPLAN LAS ORDENES DEL TRIBUNAL. ASI PUES, LAS PARTES TIENEN 5 DIAS FINALES PARA PRESENTAR EL **INFORME DE CONFERENCIA. EL INCUMPLIMIENTO DE ESTA ORDEN CONLLEVARA A QUE SE ACOJAN como finales las recomendaciones del informe social forense sobre custodia del 5 de abril de 2023 (Sumac #147).**[11]

Tras varios trámites procesales, el 27 de marzo de 2024, el TPI dictó *Orden Enmendada* señalando la vista de impugnación del *Informe Social Forense* para el 15 de mayo de 2024.[12] Asimismo, les concedió a las partes hasta el 6 de mayo de 2024 para presentar el informe de conferencia conjunto, so pena de eliminar las alegaciones de la parte incumplidora.

El 30 de abril de 2024, en vista de que no se había concluido el descubrimiento de prueba, el foro primario canceló la vista de impugnación pautada.[13]

Ulteriormente, el 2 de agosto de 2024, el TPI emitió una *Orden* donde advirtió que le anotaría la rebeldía o eliminaría las alegaciones a la parte que no presentara el informe de conferencia solicitado en o antes del 2 de septiembre de 2024.[14]

El 11 de septiembre de 2024, el foro primario dictó *Orden* en la cual hizo constar el incumplimiento de ambas partes en presentar el informe de conferencia conjunto en la fecha asignada.[15] En específico, dictaminó como sigue:

> LA DEMANDADA SE ALLANÓ A DICHO INFORME SOCIAL, PERO EL DEMANDANTE QUIERE IMPUGNARLO. SIN EMBARGO, AL DÍA DE HOY, NO HA PODIDO CELEBRARSE LA VISTA DE IMPUGNACIÓN DE INFORME SOCIAL SIMPLE Y SENCILLAMENTE PORQUE EL DEMANDANTE, QUIEN ES EL PROMOVENTE DE LA IMPUGNACIÓN, NO HA PRESENTADO INFORME DE CONFERENCIA, INCUMPLIMIENTO [*SIC*.] ASÍ CON LAS ÓRDENES DE ESTE TRIBUNAL.
>
> MUESTRE CAUSA EN 5 DÍAS EL DEMANDANTE POR LO CUAL ESTE TRIBUNAL NO DEBA ADOPTAR COMO FINALES LAS

---

[11] *Íd.,* anejo 106, pág. 478. (Énfasis en el original).
[12] *Íd.,* anejo 120, pág. 513.
[13] *Íd.,* anejo 123, págs. 563-564.
[14] *Íd.,* anejo 143, págs. 797-798.
[15] *Íd.,* anejo 151, págs. 811-812.

RECOMENDACIONES DEL INFORME SOCIAL FORENSE SOBRE CUSTODIA DEL 5 ABRIL DE 2023. EL INCUMPLIMIENTO DE ESTA ORDEN POR PARTE DEL DEMANDANTE CONLLEVARÁ QUE SE ADOPTEN COMO FINALES LAS RECOMENDACIONES DEL INFORME SOCIAL FORENSE SOBRE CUSTODIA DEL 5 DE ABRIL DE 2023, SIN MÁS CITARLE NI OÍRLE.[16]

Ante el reiterado incumplimiento de las partes con las órdenes del tribunal, el 23 de septiembre de 2024, el TPI emitió *Resolución* en la cual acogió como finales las recomendaciones del *Informe Social Forense* sobre custodia.[17]

En desacuerdo, el 8 de octubre de 2024, el señor Merced presentó *Solicitud de Reconsideración y de Orden* mediante la cual alegó que la determinación del TPI violó su derecho al debido proceso de ley.[18] Específicamente, adujo que el proceso de descubrimiento de prueba no había concluido y que la señora Santiago no había provisto información pertinente sobre el fotógrafo José Hernández.

En esa misma fecha, el foro primario dictó *Orden* concediendo 10 días al señor Merced para que detallara la pertinencia del testimonio del fotógrafo sobre el *Informe Social Forense*.[19]

En consecuencia, el 18 de octubre de 2024, el señor Merced presentó *Moción en Cumplimiento de Orden* donde expresó que la prueba testifical era necesaria para culminar la deposición en curso y argumentó que detallar su estrategia legal lo colocaría en una posición de desventaja.[20] Además, adujo lo siguiente:

> **Se reitera que tal prueba es necesaria para culminar la deposición a la demandada y, dependiendo de lo informado por el fotógrafo, que se ha negado a proveer lo solicitado, determinar si su testimonio sería necesario.[21]**

---

[16] *Íd.*
[17] *Íd.*, anejo 152, págs. 813-814.
[18] *Íd.*, anejo 153, págs. 815-821.
[19] *Íd.*, anejo 154, pág. 822.
[20] *Íd.*, anejo 155, págs. 823-826.
[21] *Íd.*, anejo 155, pág. 823. (Énfasis suplido).

Ante esto, el 6 de noviembre de 2024, la señora Santiago presentó *Moción en Cumplimiento de Orden Solicitando se Declare No Ha Lugar la Moción Presentada por el Demandante y se Mantenga la Resolución Emitida por este Foro el Pasado 23 de septiembre de 2024 Acogiendo como Finales las Recomendaciones Contenidas en el Informe Social.*[22]  Allí alegó que los escritos presentados por el señor Merced no cumplen con la *Orden* del Tribunal y, además, sostuvo que la información que le fue solicitada no es pertinente ni impugna el *Informe Social Forense.*

A esos efectos, el 8 de noviembre de 2024, el TPI dictó *Resolución Interlocutoria* mediante la cual denegó la solicitud de reconsideración y reafirmó la adopción de las recomendaciones del *Informe Social Forense* sobre la custodia.[23] Además, hizo la siguiente determinación:

> **ESTE TRIBUNAL ESTÁ CONVENCIDO QUE EL DEMANDANTE NO TIENE UN INTERÉS LEGÍTIMO DE IMPUGNAR EL INFORME SOCIAL Y LO QUE HA HECHO ES RETRASAR LA DISPOSICIÓN FINAL DEL CASO EN TORNO AL INFORME SOCIAL, QUE YA TIENE MÁS DE UN AÑO.[24]**

Inconforme, el señor Merced presentó un recurso de Apelación en el que alega que el foro primario incurrió en los siguientes errores:

A. El Tribunal de Primera Instancia erró al otorgar la custodia del menor a la Apelada sin la celebración de una vista en sus méritos, lo que contraviene el principio fundamental de audiencia, ya que el Apelante no tuvo la oportunidad de argumentar ni presentar su caso ante el tribunal, privándolo de su derecho a ser oído.

B. El Tribunal de Primera Instancia erró al emitir, como medida punitiva, una decisión que puso fin a la controversia, la cual carece de apoyo en el expediente judicial y es contraria al ordenamiento jurídico vigente, violando así el

---

[22] *Íd.,* anejo 157, págs. 828-836.
[23] *Íd.,* anejo 160, págs. 850-855.
[24] *Íd.,* anejo 160, pág. 854. (Énfasis suplido).

derecho del Apelante a ver el caso en sus méritos.

C. El Tribunal de Primera Instancia erró al negarle al Apelante la oportunidad de finalizar el descubrimiento de prueba -el cual había sido retenido por la apelada durante más de un año- impidiendo que el Apelante presentara prueba que podría haber influido en el resultado del caso, afectando así su derecho a una defensa adecuada y equitativa.

D. El Tribunal de Primera Instancia erró al emitir una determinación que puso fin a la controversia, sin cumplir con la Regla 42 de Procedimiento Civil y los postulados del Tribunal Supremo, es decir sin establecer las determinaciones de hechos y las conclusiones de derecho.

Luego de revisar los escritos de ambas partes y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

Como regla general, a los progenitores les asiste el derecho de velar por el cuido, custodia y control de sus hijos.[25] La custodia, por su parte, es un componente de la patria potestad porque impone a los progenitores el deber primario de tener a sus hijos no emancipados bajo su compañía.[26] Es decir, es el derecho de los progenitores sobre la tenencia física o control de su hijo menor, cuya principal implicación es ejercer sobre este su cuidado inmediato.[27]

Ahora bien, la Ley Núm. 223-2011, según enmendada, conocida como *"Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia"* (en adelante, Ley Núm. 223-2011)[28], entre otras cosas,

---

[25] *James Montes v. Montes James,* 213 DPR 718 (2024); *Rentas Nieves v. Bentancourt Figueroa*, 201 DPR 416, 428 (2018).
[26] *Torres, Ex Parte*, 118 DPR 469, 476 (1987).
[27] *Justino González v. Norat Santiago*, 212 DPR 855, 863 (2023).
[28] 32 LPRA sec. 3181 *et seq.*

persigue "promover un mayor grado de participación y presencia de ambos progenitores en la vida de los niños que son producto de una pareja divorciada o de una pareja consensual separada […] a los fines de contribuir a una mejor calidad de vida".[29] De esta manera se les permite a los menores no emancipados, "el derecho a disfrutar de ambos progenitores en su vida, en el mayor grado posible, en la misma forma que se les garantiza a los niños que viven con ambos progenitores".[30] Así pues, el propósito de la Ley Núm. 223-2011 es establecer la política pública a favor de la promoción de la custodia compartida y corresponsabilidad sobre los hijos.[31]

Sobre esto, el Artículo 3 de la Ley Núm. 223-2011 define el concepto de custodia compartida como sigue:

> Para los propósitos de esta Ley, custodia compartida significa la obligación de ambos progenitores, padre y madre, de ejercer directa y totalmente todos los deberes y funciones que conlleva la crianza de los hijos, relacionándose con éstos el mayor tiempo posible y brindándoles la compañía y atención que se espera de un progenitor responsable.

> La custodia compartida no requiere que un menor tenga que pernoctar por igual espacio de tiempo en la residencia de ambos progenitores. No obstante, en el caso de que un menor solamente pernocte en el hogar de uno de los progenitores, se dará la custodia compartida si el otro progenitor se relaciona de forma amplia y en el mayor grado posible con el menor y desempeña, responsablemente, todas las funciones que como progenitor le competen y la patria protestad le impone. De ninguna manera se entenderá que la adjudicación de la custodia compartida significará la no imposición de una pensión alimentaria a favor de los menores. Tampoco significará, necesariamente, la disminución o aumento en la misma. La determinación correspondiente se hará caso a caso, dependiendo del arreglo de custodia compartida que se decrete y siempre a la luz de lo dispuesto en la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como "Ley para el Sustento de Menores".[32]

---

[29] Íd., véase, *Exposición de Motivos*.
[30] *Íd.*
[31] 32 LPRA sec. 3181 nota.
[32] 32 LPRA sec. 3181.

Asimismo, la Ley Núm. 55-2020, según enmendada, conocida como "*Código Civil de Puerto Rico de 2020*" en su Artículo 602 define el concepto de custodia compartida de forma análoga a lo dispuesto en la Ley Núm. 223-2011.[33]

Ahora bien, el Artículo 7 de la Ley Núm. 223-2011 desglosa los criterios que el TPI deberá considerar al adjudicar la custodia compartida, a saber:

1) La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2) El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3) La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4) El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5) Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6) La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7) Que la decisión no sea producto de la irreflexión o coacción.

8) Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9) Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10) Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11) Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

---

[33] 31 LPRA sec. 7281.

12) La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13) Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar, impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

[…]

14) Cualquier otro criterio válido o pertinente que pueda considerarse para garantizar el mejor bienestar del menor.[34]

Además, destacamos que el Artículo 604 del Código Civil adoptó criterios similares a los antes esbozados para considerar la adjudicación de custodia.[35]

Por otro lado, el Artículo 9 de la Ley Núm. 223-2011 señala las instancias en que la custodia compartida no debe ser considerada como beneficiosa y favorable para los mejores intereses de los menores. Estas son:

1) Cuando uno de los progenitores manifiesta que no le interesa tener la custodia de los menores, a base de un plan de custodia compartida. Se entenderá que la renuncia es a favor del otro progenitor.

2) Si uno de los progenitores sufre de una incapacidad o deficiencia mental, según determinada por un profesional de la salud, y la misma es de naturaleza irreversible y de tal magnitud que le impide atender adecuadamente a los hijos/as y garantizar la seguridad e

---

[34] 32 LPRA sec. 3185.
[35] 31 LPRA sec. 7283.

integridad física, mental, emocional y/o sexual de éstos.

3) Cuando los actos u omisiones de uno de los progenitores resulte perjudicial a los hijos o constituya un patrón de ejemplos corruptores.

4) Cuando uno de los progenitores o su cónyuge o compañero o compañera consensual haya sido convicto por actos constitutivos de maltrato de menores.

5) Cuando uno de los progenitores se encuentre confinado en una institución carcelaria.

6) Cuando uno de los progenitores ha sido convicto por actos constitutivos de violencia doméstica, según lo dispuesto en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada.

7) Situaciones donde el padre o la madre haya cometido abuso sexual, o cualquiera de los delitos sexuales, según tipificados en el Código Penal de Puerto Rico, hacia algún menor.

8) Cuando uno de los progenitores o su cónyuge o compañero o compañera consensual, si hubiera, sea adicto a drogas ilegales o alcohol.[36]

**B.**

Conforme mencionamos previamente, los tribunales tienen la responsabilidad de evaluar y determinar la custodia de un menor cónsono con las disposiciones de la Ley Núm. 223-2011. Por ello, cuando exista una controversia entre los progenitores en torno a la custodia de un menor, el tribunal referirá el caso a un trabajador social.[37] En tal escenario, el mencionado trabajador social estará encargado de realizar una evaluación y rendir un informe con recomendaciones al tribunal.[38] Dicha evaluación se denomina *evaluación social forense*.[39] Específicamente, el Manual de Normas y Procedimientos de las Unidades Sociales de Relaciones de

---

[36] 32 LPRA sec. 3187.
[37] 32 LPRA sec. 3185.
[38] *Íd.*
[39] Oficina de Administración de Tribunales, *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores*, enero 2024, pág. 19.

Familia y Asuntos de Menores de enero de 2024 define el concepto de *evaluación social forense* como sigue:

> Proceso de análisis en el cual se sigue un protocolo uniforme para que el (la) Trabajador(a) Social adiestrado(a) en casos de familia y asuntos de menores pueda brindar asesoramiento al (a la) Juez(a) en relación con la controversia referida por el Tribunal. Refleja en forma objetiva y científica la personalidad del individuo y el entorno familiar.[40]

Culminada tal evaluación, el trabajador social debe emitir un *informe social forense*.[41] Este último es el:

> Producto final del proceso de evaluación donde se atiende la controversia referida por el Tribunal, se ofrecen recomendaciones sobre la controversia y se destacan todas las áreas evaluadas, la fuente de datos, e integra el conocimiento teórico o razonamiento que fundamenta las recomendaciones.[42]

En cuanto a las recomendaciones emitidas por el trabajador social respecto al derecho de custodia, el Artículo 8 de la Ley Núm. 223-2011 establece que son uno de los factores que el tribunal adjudicador debe considerar para emitir el decreto correspondiente.[43] Así pues, "el Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo siempre los mejores intereses y el bienestar de los menores a la luz de todas las circunstancias existentes".[44] Por lo cual, "[l]a recomendación sobre custodia del trabajador social, así como la determinación sobre custodia del Tribunal tendrán como propósito garantizar el mejor bienestar del menor".[45]

### C.

Por otro lado, es norma firmemente establecida que los tribunales apelativos no intervienen con el manejo de los casos por parte del Tribunal de Primera Instancia,

---

[40] *Íd.*, pág. 8.
[41] *Íd.*, pág. 35.
[42] *Íd.*, pág. 10.
[43] 32 LPRA sec. 3186.
[44] *Íd.*
[45] *Íd.*

"salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[46] Conviene destacar que "la discreción se fundamenta [,entre otras,] en el contacto con los litigantes y la prueba que se haya presentado"[47] ante el foro sentenciador. Por esta razón, se presume que el Tribunal de Primera Instancia conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una disposición final.[48]

De modo que, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia salvo que incurra en algunas de las conductas previamente mencionadas y si a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación".[49]

## -III-

Para el señor Merced, la decisión de otorgar la custodia a la señora Santiago, sin celebrar una vista en sus méritos constituye una violación al debido proceso

---

[46] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, 213 DPR 314 (2023); *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 DPR 465, 497 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 338 (2021); *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 276 (2019); *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 933 (2015).
[47] *Citibank v. ACBI et al.*, *supra*, pág. 736.
[48] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Mejías et al. v. Carrasquillo et al*, 185 DPR 288, 306-307 (2012). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón*, *supra*.
[49] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020).

de ley, ya que le despojó de la oportunidad de presentar prueba y argumentos relevantes a la controversia.

Sostuvo, además, que dicha determinación tuvo el efecto de eliminar las alegaciones del apelante y de dar fin al litigio de custodia, privándole de este modo de su día en corte.

Finalmente, para el señor Merced, la determinación cuya apelación se solicita constituye una sentencia sujeta a revisión judicial que, sin embargo, "carece de fundamentos, tanto fácticos como jurídicos".

En cambio, para la señora Santiago surge claramente del expediente que la determinación impugnada no violentó el debido proceso de ley del apelante. Esto es así, porque durante 2 años el foro recurrido le otorgó al señor Merced "múltiples oportunidades para presentar sus argumentos, identificar la prueba y presentar el informe de conferencia", oportunidades que aquel no aprovechó.

Entiende la apelada que, como consecuencia de la conducta previamente expuesta, "[e]l Apelante no colocó al Tribunal de Primera Instancia en posición de tomar una determinación debidamente fundamentada o que, al menos, guiara al foro en cuanto a la prueba que interesaba presentar a través de la vista de impugnación solicitada".

Arguye, además, la señora Santiago, que los argumentos relacionados con la violación del derecho al descubrimiento de prueba del señor Merced son improcedentes y tardíos, ya que las determinaciones sobre descubrimiento de prueba, ahora impugnadas, nunca fueron cuestionadas ante este tribunal intermedio, por

lo cual advinieron finales y firmes, constituyendo de esta forma la ley del caso.

Para terminar, la apelada considera que no se violentó la Regla 42.2 de Procedimiento Civil porque en nuestro ordenamiento procesal la adjudicación sin determinaciones de hechos explícitas es válida si, como en el presente caso, "el expediente refleja con claridad los hechos esenciales".

Como preludio a la adjudicación de la controversia, tenemos que expresar nuestra frustración por el accidentado, confuso y errático trámite procesal de este caso. Se combinaron para el lamentable resultado, la animosidad entre las partes, la animadversión entre las abogadas y las deficiencias en el manejo del caso por parte del foro sentenciador. La revisión independiente del expediente ha sido un ejercicio tortuoso, torcido, al extremo de que para entender la controversia y adjudicarla adecuadamente, hemos tenido que vencer la resistencia de 855 páginas, vacías de contenido jurídico, pero repletas de imputaciones cruzadas y vacilaciones procesales.

Del sinuoso recorrido se desprende que el apelante incumplió reiteradamente las órdenes del TPI. Así pues, aproximadamente, en 11 ocasiones desobedeció la orden del Tribunal de presentar el informe de conferencia.[50] Como resultado de lo anterior, se suspendió la vista de impugnación del Informe Social Forense una vez.[51] Como si lo anterior fuera poco, en 3 ocasiones el TPI dejó sin efecto el apercibimiento de que adoptaría como finales las recomendaciones del *Informe Social Forense*.[52]

---

[50] Apéndice del apelante, págs. 322; 400-404; 811-814.
[51] *Íd.*, págs. 511-512; 563-564.
[52] *Íd.*, págs. 400-404; 466-467; 476-478.

De modo que, desde el 5 de abril de 2023, fecha en que se presentó el *Informe Social Forense*,[53] hasta el 27 de septiembre de 2024, fecha en que el TPI finalmente, adoptó como finales las recomendaciones del Informe en cuestión,[54] transcurrieron 17 meses; en otras palabras, un año y cinco meses sin que se pudiera adjudicar la controversia sobre la custodia compartida promovida por el señor Merced, el 13 de abril de 2023[55].

¿Y qué impedía que esta controversia no se hubiese adjudicado en un tiempo razonablemente menor? Según el apelante, que no había concluido el descubrimiento de prueba, específicamente la deposición de la señora Santiago, porque se necesitaba obtener el testimonio de "un fotógrafo que había viajado con la apelada".

Ahora bien, cuando el 8 de octubre de 2024 el TPI le ordenó al señor Merced que expusiera detalladamente "cómo los testimonios de los fotógrafos José Hernández y Levi R. Ventura demostraran [*sic.*] que las recomendaciones del informe suscrito por la trabajadora social del tribunal Normaliz Yunqué Robles no abonan al mejor bienestar del menor. Es decir, …saber la pertinencia de dichos testimonios",[56] el apelante contestó: "**Se <u>reitera</u> que tal prueba es necesaria para culminar la deposición a la demandada y, <u>dependiendo</u> de lo informado por el fotógrafo, que se ha negado a proveer lo solicitado, <u>determinar si su testimonio sería necesario</u>**"[57].

Esta afirmación elusiva, imprecisa y acomodaticia es insuficiente para haber detenido la adjudicación de

---

[53] *Íd.*, págs. 166-187.
[54] *Íd.*, págs. 813-814.
[55] *Íd.*, págs. 190-193.
[56] *Íd.*, págs. 852-853.
[57] *Íd.*, pág. 853.

la controversia de la custodia por 17 meses. Un análisis desapasionado de la misma permite concluir que, en última instancia el señor Merced no tenía fundamento alguno para dilatar el curso ordinario del descubrimiento de prueba.

Temprano en la revisión del extenso expediente concluimos, al igual que la señora Santiago, que "…la información sobre contratación de fotógrafos fue solicitada con el propósito de descubrir prueba relacionada al caso de establecimiento de pensión que se ventila ante este foro concurrentemente con el caso de impugnación de custodia"";[58] no con la controversia de la custodia.

Así pues, al evaluar la conducta procesal del apelante, determinamos que no abusó de su discreción el TPI al adoptar como finales las recomendaciones del *Informe Social Forense* sobre custodia de 5 de abril de 2023. A esos efectos, no nos queda más que coincidir con la siguiente apreciación del foro sentenciador: "este Tribunal está convencido de que el demandante no tiene un interés legítimo de impugnar el informe social y lo que ha hecho es retrasar la disposición final del caso en torno al informe social, que ya tiene más de un año".

En fin, considerada como una medida de manejo del caso, la determinación recurrida merece nuestra deferencia y no justifica nuestra intervención revisora.

A la luz del trasfondo procesal descrito, los señalamientos de error del señor Merced resultan predecibles e improcedentes. Veamos.

---

[58] *Íd.*, pág. 854.

Violación del debido proceso de ley, ya que se le despojó de la oportunidad de presentar prueba y argumentos relevantes a la controversia. No tiene razón. Si algo revela el expediente es que el apelante tuvo múltiples oportunidades para impugnar las determinaciones de custodia del *Informe Social Forense*. Sin embargo, no entró en materia. Prefirió dilatar la consideración de la controversia a base de una alegación espuria sobre la falta de determinada prueba, cuya pertinencia no pudo establecer.

Tampoco tiene razón el señor Merced al argüir que la determinación recurrida "…tuvo el efecto… de dar fin al litigio de custodia…". Esta afirmación es jurídicamente incorrecta. Desde finales del siglo pasado, el Tribunal Supremo de Puerto Rico resolvió que los casos de familia son *sui géneris*, no constituyen cosa juzgada y están sujetos a revisión judicial "si ocurre un cambio en las circunstancias que así lo justifique…".[59]

Para terminar, la ausencia de determinaciones de hecho y conclusiones de derecho no es un defecto fatal que produzca la nulidad de la *Sentencia*. La misma Regla 42.2 de Procedimiento Civil permite dispensar de este requerimiento, entre otras circunstancias, "cuando por la naturaleza de la causa de acción o el remedio concedido en la sentencia, el tribunal así lo estime".[60] No está en controversia que la determinación de custodia de un menor es una causa de acción que goza de la más alta jerarquía en nuestro ordenamiento jurídico y que

---

[59] *Figueroa Hernández v. Del Rosario Cervoni*, 147 DPR 121, 128 (1998).
[60] Regla 42.2(d) de las Reglas de Procedimiento Civil de 2009 (32 LPRA Ap. V). Véase, además, Informe de Reglas de Procedimiento Civil, Tribunal Supremo de Puerto Rico, marzo de 2008, pág. 513.

ante la injustificada dilación de su adjudicación procede ser ágil y flexible y conceder el remedio lo más rápido posible.

Pero hay más. Las recomendaciones sobre custodia en cuestión no son arcanas o misteriosas. Por el contrario, las conoce el apelante desde los inicios del pleito cuando decidió impugnarlas y obran en el expediente desde el 5 de abril de 2023.

Además, lejos de la contención del señor Merced, aquellas tienen tanto fundamentos fácticos como jurídicos. Sobre el particular basta examinar con atención el *Informe Social Forense* para concluir que el apelante no tiene razón.[61]

**-IV-**

Por los fundamentos previamente expuestos, se confirma la *Resolución* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Salgado Schwarz está conforme con la decisión, y añade: "Aún cuando entendemos que la decisión de foro apelado fue la correcta, y por ende, confirmamos la misma, debemos enfatizar que la ruta hacia dicha determinación fue una de las más largas que hemos experimentado al revisar determinaciones de esta naturaleza.

Ambas partes se desentendían de las órdenes dictadas por la distinguida magistrada del TPI, sin consecuencia alguna. Como muy bien dijo mi estimado Presidente de panel y voz colegiada del caso, en 11 ocasiones el apelante ignoró la orden de confeccionar el

---

[61] Apéndice del apelante, págs. 169-170 (Protocolo de Evaluación); 171-182 (Historial Biopsicosocial); 182-185 (Análisis de los Hallazgos); 186-187 (Recomendaciones).

Informe de Conferencia bajo pretexto de que existía una objeción de la apelada a cierta prueba. Las partes siguieron el pleito de forma circular, con animosidad e imputaciones que a nada abonaron al debido proceso de las partes.

Invitamos a las partes a reflexionar sobre este asunto, en especial, sobre un caso que perdurará activo mientras la criatura sea menor de edad.


                    Lcda. Lilia M. Oquendo Solís
              Secretaria del Tribunal de Apelaciones